**Rex Bradley SHANKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–81–00198–CR.**

Court of Appeals of Texas, El Paso.

Dec. 31, 1986.

Rehearing Denied Jan. 28, 1987.

 

Michael McLeaish, Odessa, Jim Vollers, Austin, Emilio Davila, Jr., Laredo, for appellant.

Al W. Schorre, Jr., Dist. Atty., Midland, for appellee.

Before OSBORN, C.J., and SCHULTE and FULLER, JJ.

## OPINION ON REMAND

PER CURIAM.

This is an appeal from a conviction for the offense of murder. The jury assessed ninety-nine years' imprisonment. We affirm.

■ On September 15, 1982, this Court affirmed the Appellant's conviction. *Shanks v. State,* 643 S.W.2d 150 (Tex.App. —El Paso 1982). On May 28, 1986, the Court of Criminal Appeals, 710 S.W.2d 585, remanded the cause to this Court to consider the merits of Appellant's contention concerning alleged unobjected-to error in the lower court's charge on the lesser included offense of voluntary manslaughter. As *Cobarrubio v. State,* 675 S.W.2d 749 (Tex. Crim.App.1984), and *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985), were decided subsequent to the issuance of this Court's original opinion, the Court of Criminal Appeals has instructed this Court to consider the Appellant's alleged ground of error in light of those decisions. In *Cobarrubio, supra,* the Court of Criminal Appeals held that the burden of demonstrating lack of sudden passion fell upon the prosecution and that burden must be correctly placed in the charging paragraph of a charge. The jury charge in the instant case is clearly that type of charge condemned in *Cobarrubio.* However, error of this type is not per se reversible; rather, a case-by-case analysis is necessary to determine if fundamental error exists. *Lawrence v. State,* 700 S.W.2d 208 (Tex.Crim. App.1985). In *Almanza, supra,* the Court of Criminal Appeals indicated that unobjected-to error in the charge will result in reversible error only if the error produced egregious harm. The court must:

[L]ook to the whole record bearing upon the subject. What was the nature of the testimony supporting the verdict? Was it cogent and overwhelming? What was the character of the testimony presenting the phase or theory of the case omitted to be noticed in the charge, and upon which omission error is assigned? Was it all reasonable? Did it present a theory which a reasonable mind could entertain, or was it supported by such testimony as was remotely calculated to destroy the State's case when considered in connection with the other testimony in the case, as well as the charge as a whole? Was the phase of the case simply an addition to the case as made by the State and consistent therewith, or was it in direct conflict with the State's theory?

*Almanza, supra.*

In the instant case, the State's evidence indicated that the Appellant and Patricia McPeters engaged in a conspiracy to murder McPeters' husband in order to obtain the proceeds of several life insurance policies. On July 28, 1980, they, accompanied by McPeters' young son, visited the home of Willie Wayne Jennings and his wife in Wichita Falls. They enlisted the aid of Wayne Jennings, with various promises of money for his assistance in the murder. The four adults and the child drove to Odessa in Mrs. McPeters' car, Appellant driving. They stopped at the intended victim's home. Appellant, Patricia McPeters and Wayne Jennings broke in through a window and secured three knives to use in

**770**

the murder, one for each participant. Shortly before midnight, Mrs. McPeters telephoned her husband, feigning car trouble and asking him to meet her on an isolated road. At that location, the conspirators disabled the vehicle. Mrs. McPeters remained in the vehicle. Appellant and Wayne Jennings, armed with knives, waited behind nearby bushes. Mrs. Jennings was told by the Appellant to remain some twenty yards to their rear. The victim arrived and, while engaged in conversation with his wife, was rushed by Appellant. Appellant struck the victim with his knife. Both fell to the ground struggling. Appellant called Jennings to his assistance, indicating that the victim had a knife and cut him. Jennings came to his aid, kicking and stabbing the victim. Appellant, Mrs. McPeters, both Jennings and young McPeters reentered the vehicle and drove away. Appellant suggested running over the dying McPeters but was dissuaded by the Jennings. En route to a hospital for treatment of his injuries, Appellant concocted a story of assault by several blacks. All the adults related this story to the police at the hospital. The Jennings returned to Wichita Falls; the knives were left in their custody. Mrs. Jennings later threw the knives away, but subsequently directed police to a small pond where two of them were recovered. At trial, Appellant denied the murder-for-hire testimony of Jennings and his wife. He contended that they accompanied Patricia McPeters to protect her at a meeting with her abusive husband. Appellant stated that the victim pushed Mrs. McPeters. He then came to her assistance, but Mr. McPeters drew a knife. He then stabbed McPeters in defense of himself and Mrs. McPeters. The Appellant related that he had been told the deceased was dangerous and that he was scared during the altercation.

■ Even if we assume that this evidence marginally raises the issue of voluntary manslaughter, it is difficult to perceive how any egregious harm has resulted. Utilizing the standard mentioned above, it is clear that voluntary manslaughter is, at best, a secondary defensive issue

in this case. Defense counsel did not argue it in closing. The entire defensive focus was upon self-defense and defense of another. As such, no error is shown. See: *Lawrence, supra.*

The judgment of the trial court is affirmed.