Gerald Wayne TUCKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–97–00213–CR.

Court of Appeals of Texas,
Tyler.

March 31, 1999.

Discretionary Review Refused
Sept. 22, 1999.

Ebb B. Mobley, Longview, for appellant.

Tim Cone, Gilmer, for appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

RAMEY, Chief Justice.

A jury convicted Appellant of the offense of indecency with a child and assessed punishment at eight years' confinement and a $5,000 fine. Appellant appeals raising two points of error. We will affirm.

The undisputed evidence establishes that on or about September 5, 1995, four Big Sandy High School students, L. K., M. A., R.H. and C. G., attended a post-game party at Appellant, the school bus driver's home. During the party, the students swam, drank beer and smoked cigarettes. Additionally, fourteen-year old M.A. and L.K. had sexual intercourse in a back bedroom of Appellant's home. Sometime afterwards, L.K. left and M.A. decided to take a bath. Appellant, in the presence of R.H. and C. G., then bathed M.A. and was later accused of having sexually touched her. Appellant was thereafter indicted for the offense of indecency with a child.

On June 3, 1996, the parties selected a jury, and on June 10, 1996, the day of trial, Appellant filed a motion for continuance on grounds that C. G., a material witness to the defense had been subpoenaed but was "out of the state at this time." Appellant's motion alleged that C.G. was a material witness because he would testify that he was in the presence of Appellant and the complaining witness at the time the alleged offense occurred and would testify that the alleged offense did not happen.

At the hearing on the motion for continuance Appellant's trial counsel stated that in preparing for trial the previous week, he discovered that the State's subpoenas for C.G. had been returned unserved. Counsel stated that he then issued his own subpoena for C.G. but was likewise unsuccessful in having it served as Appellant was out of State. Appellant's counsel explained to the court that C. G.'s testimony was crucial since he claimed he had been in bed with R.H. all night on the evening in question and had also been present during the alleged violation against M.A. Appellant's counsel asserted that C. G.'s testimony would rebut the testimony of both complaining witnesses, and corroborate Appellant's testimony. In response, the State argued that it also sought to question C.G. but that he had been out of State in an unknown location since September of 1995, and his return date, if any, was unknown. Following these arguments, the trial court denied the continuance and proceeded to trial.

The jury thereafter convicted Appellant of the charged offense. Following his conviction, Appellant filed a motion for new trial supported by the affidavit of C.G. which represented that Appellant's touching of M.A. was not sexual in nature. Following a hearing on the motion, the trial court denied relief, and this appeal ensued.

■■■■ Appellant's first point of error alleges that the trial court abused its discretion in denying his motion for continuance which had been filed on grounds that the defense was missing a material witness. Article 29.06 of TEX.CODE CRIM. PROC.ANN. (Vernon 1989) sets forth the following requirements for a motion for continuance based upon absence of a material witness:

In the first motion by the defendant for a continuance, it shall be necessary, if the same be on account of the absence of a witness, to state:

1. The name of the witness and his residence, if known, or that his residence is not known.

2. The diligence which has been used to procure his attendance; and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for, a subpoena, in cases where the law authorized an attachment to issue.

3. The facts which are expected to be proved by the witness, and it must appear to the court that they are material.

4. That the witness is not absent by the procurement or consent of the defendant.

5. That the motion is not made for delay.

6. That there is no reasonable expectation that attendance of the witness can be secured during the present term of court by a postponement of the trial to some future day of said term. The truth of the first, or any subsequent motion, as well as the merit of the ground set forth therein and its sufficiency shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right. If a motion for continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the motion was of a material character, and that the facts set forth in said motion were probably true, a new trial should be granted, and the cause continued or postponed to a future day of the same term.

TEX.CODE CRIM. PROC. art. 29.06 (Vernon 1989). The only means of preserving error in the overruling of a motion for continuance due to the absence of a witness is by motion for new trial. *Taylor v. State,* 612 S.W.2d 566, 569 (Tex.Cr.App.1981); *Hackleman v. State,* 919 S.W.2d 440, 452 (Tex.App.—Austin 1996, pet. ref'd, untimely filed). The refusal of a continuance generally lies within the sound discretion of the trial court. *Collier v. Poe,* 732 S.W.2d 332, 334 (Tex.Cr.App.1987); *Hackleman,* 919 S.W.2d at 452. A trial court's refusal of a continuance is reversible only for abuse of discretion. *Matamoros v. State,* 901 S.W.2d 470, 478 (Tex.Cr.App. 1995); *Smith v. State,* 721 S.W.2d 844, 850 (Tex.Cr.App.1986). We have, however,

held that the trial judge has a duty to grant a defendant's motion for continuance where a witness is missing provided the statutory requirements are met, and there is no issue of lack of diligence. *State v. Bacon,* 751 S.W.2d 713, 716 (Tex.App.—Tyler 1988, orig. proceeding.).

Where, however, the defendant has failed to demonstrate the diligence used in seeking to locate and interview a missing witness, it is not error for the trial court to deny the motion for continuance. *Johnson v. State,* 467 S.W.2d 247, 250 (Tex.Cr.App.1971). Diligence, in the motion for continuance context, is the exercise of timely and persistent efforts to secure the attendance of witnesses, using the means and agencies provided by law. *Edwards v. State,* 148 Tex.Crim. 104, 185 S.W.2d 111, 112 (1945). If defense counsel waits until only a few days before trial to seek to secure a witness for trial, the court may conclude that due diligence has not been used. *Norton v. State,* 564 S.W.2d 714, 716–717 (Tex.Cr.App.1978). In order to be successful on his or her motion, the defendant's attorney should also demonstrate the likelihood that the witness will be found within a reasonable amount of time. *Salinas v. State,* 542 S.W.2d 864, 866 (Tex. Cr.App.1976). Where it appears that the witness may be absent indefinitely, it is not error to deny the continuance. *Id.* Moreover, the Court of Criminal Appeals has upheld the denial of a motion for continuance where defense counsel failed to include either the address of the witness's residence or a statement that the witness's address is unknown. *Gonzales v. State,* 505 S.W.2d 819, 821 (Tex.Cr.App. 1974).

Here, the motion for continuance fails to satisfy the mandatory requirements of Article 29.06 in four respects. It fails to specify: (1) either C. G.'s residence or state that his residence is unknown; (2)

that diligence was used in attempting to procure C. G.'s presence at trial; (3) that C.G. is not absent by the defendant's "procurement or consent"; and (4) that there is a reasonable expectation that C. G.'s attendance can be procured at a future term of court. Because of the apparent importance of C. G.'s testimony, justice might have been better served by granting the continuance. Nevertheless, given that Appellant's motion for continuance failed to satisfy any of these requirements, in light of the foregoing authorities, we cannot say that the trial court committed an abuse of discretion in overruling the motion for continuance. Consequently, Appellant's first point of error is overruled.

▇▇▇▇ In point two, Appellant alleges that the trial court erred in failing to grant his motion for new trial which asserted that C. G.'s newly available testimony would have brought about a different result at trial. As noted above, a motion for new trial is a prerequisite when challenging a trial court's denial of a motion for continuance under TEX.CODE CRIM. PROC. art. 29.06(6). A motion for new trial based on newly available evidence of a previously missing witness has been treated the same as one based upon newly discovered evidence. *Anderson v. State*, 717 S.W.2d 622, 626 (Tex.Cr.App.1986); *Hackleman*, 919 S.W.2d at 453.[1] A trial court's ruling on a motion for new trial should not be disturbed absent a clear abuse of discretion. *Jones v. State*, 711 S.W.2d 35, 36 (Tex.Cr. App.1986). Several factors must be considered in granting a new trial for newly discovered or newly available evidence:

1. The newly discovered evidence was unknown to the movant at the time of his trial;

2. The movant's failure to discover the evidence was not due to his want of diligence;

3. The materiality of the evidence is such as would probably bring about a different result in another trial; and

4. The evidence is admissible, and not merely cumulative, corroborative, collateral, or impeaching. *Tate v. State*, 834 S.W.2d 566, 570 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). Additionally, in cases where the trial court overrules a motion for continuance which alleged the absence of a material witness, Article 29.06(6)directs that the trial court consider the following factors in determining whether to grant a new trial:

[I]f it appear upon the trial that the evidence of the witness or witnesses named in the motion was of a material character, and that the facts set forth in said motion were probably true, a new trial should be granted, and the cause continued or postponed to a future day of the same term.

TEX.CODE CRIM. PROC. art. 29.06(6) (Vernon 1989).

TEX.CODE CRIM. PROC. art. 40.001 (Vernon Supp.1996), which provides: "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX.R.APP. P. 30(b)(6), which similarly states: "A new trial shall be granted an accused where new evidence favorable to the accused has been discovered since trial," had been disapproved by the legislature in 1993.

---

1. In *Moore v. State*, 882 S.W.2d 844, 849 (Tex.Cr.App.1994), the court held that former TEX.R.APP. P. 30(b)(6), and former TEX.CODE CRIM. PROC. art. 40.03(6) were "virtually identical" and that "the same analysis" would be applied. Extrapolating from that holding, the court in *Hackleman*, then applied the same analysis stating that "certainly TEX.R.APP. P. 30(b)(6) and Article 40.001 are virtually the same." The instant motion for new trial was filed in July of 1996. Thus, it is governed by

It is undisputed that the nature of C. G.'s testimony was known to Appellant at the time he sought the continuance, and the record from the motion for new trial hearing shows that Appellant's trial counsel made no further attempt to establish his diligence in seeking to obtain the presence of the witness. Moreover, while C. G.'s testimony appears material and ostensibly true, for the reasons set forth below, we hold that the trial court did not abuse its discretion in denying the motion for new trial.

■ At the motion for new trial hearing, C.G. testified that he, and not Appellant, was responsible for the presence of M.A. and R.H. at Appellant's house on the night in question. C.G. stated that he and L.K. asked Appellant if they could go swimming at his house after the game. C.G. and L.K. had intended to bring two other girls to Appellant's house, but when that did not work out, R.H. and M.A. asked to go. He further stated that during that evening they all agreed to watch pornographic videos, so L.K. went to get them but never came back. C.G. testified as follows with regard to M.A.'s bath:

> Well, M.A. had intercourse with L.K. and she said she felt dirty and she was tipsy, and she asked Gerald if he would help her take a bath. And he hesitated at first, but then he said all right.

C.G. also stated that Appellant did not have sex with her or fondle her in any way. C.G. stated that he was present during the bath and could see Appellant at all times. While Appellant assisted her, he did not touch M.A.'s breasts, genitals or private parts, but "[i]f he did, it was rinsing the soap off of the washcloth. He had a cloth." C.G. further stated that as far as

he could tell, Appellant was not aroused in any way by these events.

While C.G.'s testimony is material to the charged offense, it is, in most respects, cumulative of that presented at trial by other witnesses.[2] At Appellant's trial, three other witnesses similarly testified to the same events. First, M.A. testified that they were planning to watching some pornographic videos, but Appellant could not get the video recorder to work, so, she decided to take a bath. Although M.A. stated she was intoxicated at the time, she remembered asking R.H. to accompany her while she took a bath. M.A. stated that R.H. was sitting on the toilet lid visiting with her when C.G. came in and asked what they were doing. She stated that thereafter, they were all "sitting there talking about something" when Appellant came in. M.A. stated that after that, she remembered Appellant giving her a bath "from head to toe," and that he bathed her with a washrag and soap. She further stated that he used his hands. She stated that during this time she was dozing in and out but that he did touch her breasts, her "privates" and her buttocks. When asked why R.H. did not help her bathe, she stated that R.H. tried to but "I kept slipping down and she couldn't hold me up."

Similarly, R.H. testified that after Appellant could not get the video recorder to play the pornographic videos, M.A. decided she wanted a bath. Since she had been drinking a lot, she asked R.H. to accompany her. R.H. stated, that she herself was not intoxicated. After R.H. and M.A. went into the bathroom, Appellant and C.G. came in, and Appellant gave M.A. a bath. R.H. stated that M.A. was probably capable of giving herself a bath; however, she

---

**2.** While there is some discrepancy in the evidence as to whether Appellant touched M. A.'s genitals or anus, there appears to be no dispute that Appellant touched M. A.'s breasts at least with the washcloth.

was there to assist if needed. R.H. also stated that after M.A. got into the bathtub, Appellant "like washed her from head to toe everywhere, all over." She too stated that Appellant used a washcloth and that he touched her breasts, vaginal area and buttocks. R.H. further stated that after M.A. got out of the tub, Appellant dried her off and put baby powder all over her.

Appellant then testified that at the time M.A. requested a bath, she was not very badly intoxicated although she did stagger some and did need help having a bath. He stated that when M.A. asked if she could take a bath, he and the others were sitting in the living room. When she asked, he stated that he flippantly asked if she needed her back washed, and she said "sure." After that, Appellant stated that he and the others got up and went into the bathroom. He then stated:

> M.A. got into the tub, ran her water, got in the tub, and I washed her back, her neck, inadvertently touched her breast with the washrag—it wasn't a sexual bath by any nature, and her legs, not her private parts, other private parts.

Appellant further stated that he could not really judge whether she was able to bathe herself, but "[s]he needed some help I would think." Appellant then stated that he absolutely did not give her a bath with the intent to sexually gratify himself and that on no other occasion did he touch her that evening. With regard to the pornographic videotapes, Appellant stated that although he had never seen them, a friend of his had given him a box of such tapes for safekeeping. Appellant would neither affirm nor deny that he had mentioned these tapes to the children.

▮▮▮▮▮ The offense with which Appellant was charged merely required that the jury find that he: (1) engaged in sexual contact with the child. Tex. Penal Code Ann. § 21.11(Vernon 1994). Sexual contact is defined as "any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." Tex. Penal Code Ann. § 21.01(2) (Vernon 1994). Intent to arouse or gratify may be inferred from conduct; there need be no oral expression of intent. *McKenzie v. State,* 617 S.W.2d 211, 216 (Tex.Cr.App. 1981); *Tyler v. State,* 950 S.W.2d 787, 789 (Tex.App.—Fort Worth 1997, no pet.). Moreover, sexual contact may be committed even though the victim is fully clothed at the time of the sexual contact; interposition of layer of fabric does not prevent the occurrence of sexual contact. *See Guia v. State,* 723 S.W.2d 763, 766 (Tex. App.—Dallas 1986, pet. ref'd).

In addition to being cumulative, C.G.'s testimony also corroborated Appellant's affirmative representation that he did not sexually gratify himself by bathing M.A. It is noted however, that neither R.H. nor M.A. suggested that the nature of Appellant's touching was sexual. Moreover, since the fact finder may infer intent to arouse from the evidence, testimonial representations as to intent are of little value. Thus, although C. G.'s testimony is both material and, in all likelihood, a reasonably accurate account of the events observed, given its cumulative, corroborative nature, we conclude that it probably would not bring about a different result if admitted in another trial. *Tate v. State,* 834 S.W.2d at 570.

For these reasons, we hold that the trial court did not abuse its discretion in overruling Appellant's motion for new trial. Appellant's second and final point of error is overruled.

Judgment **affirmed.**