COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 LEONARDO MENDOZA,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-11-00053-CR
  
                          Appeal from
  
  109th District Court
  
 of Andrews County,
 Texas
  
 (TC # 5748)
 
 
 
 
  
  
 
 
  
  
 
 
  
  
 
 


                                                                  O
P I N I O N

 

            Leonardo Mendoza appeals his
conviction of aggravated sexual assault, enhanced by a prior felony conviction.  After finding Appellant guilty of the charged
offense, the jury found the enhancement paragraph true and assessed his
punishment at life imprisonment and a fine of $10,000.[1]  We affirm.

FACTUAL SUMMARY

            In December of 2007, Amanda Gonzalez
was eighteen years of age and in her senior year of high school in Andrews,
Texas.  Amanda had little free time as
she was vice president of the student council, president of the band, and she
also served as the head athletic trainer for the high school’s sports programs,
including football, baseball, and basketball. 
Amanda spent the evening of December 11, 2007 at her house studying with
her friends Atarah Payton and Taylor Williams. 
At around midnight, Atarah’s mother called to remind her she was
supposed to be home at midnight, so Atarah and Taylor left.  Amanda forgot to lock the door after her
friends left.  She took a shower and went
to bed.  Something caused Amanda to wake
up during the night and when she looked toward her bedroom door, she saw a man
she did not recognize standing in her room. 
The man, later identified as Appellant, put his hand over her mouth and
threatened to kill her family and rape her 10-year-old sister if she screamed
or alerted her family to his presence. 
He also told her that someone else was in the house with him.  Amanda believed Appellant and she did not
fight him when he inserted his penis in her mouth.  Whenever Amanda tried to pull away, Appellant
physically forced her to continue while repeating his threats to kill her
family.  Appellant stopped after a while
but he removed Amanda’s pajamas and sexually assaulted her by forcible
penetration both anally and vaginally. 
When Appellant stopped, he told Amanda that he had not raped her, they
had just made love.  He made Amanda put
on a T-shirt and shorts and he began asking her for money.  She gave him $100 she kept in her jewelry box
but he wanted more, so Amanda told Appellant that she thought her parents kept
money in the kitchen canisters. 
Appellant made her lead him to the kitchen and he looked in the
canisters.  When he did not find any
money, he made her walk back down the hallway and ordered her to take a
shower.  Amanda initially went into the
bathroom but she continued on to her parents’ adjoining bedroom and quietly
told them to call the police because someone was in the house.  Amanda then went into her sister’s bedroom
and escorted her to her parents’ bedroom so she would be safe.  Amanda then returned to the bathroom and turned
on the water but she did not get in the shower because she knew it would wash
away evidence that could identify her assailant.  The police arrived only one to two minutes
later but Appellant had already fled the scene. 
Amanda gave a statement to police and she later underwent a sexual
assault examination in Midland.  

Cori Armstead is the director of emergency services at Midland Memorial
Hospital and the sexual assault nurse examiner coordinator for Midland
County.  Armstead performed a sexual assault
examination on Amanda Gonzalez on December 12, 2007.  Part of the examination included taking a
medical history from Amanda.  Amanda told
her that she had stayed up late the previous evening doing schoolwork and that
a man entered her bedroom and put his hand over her mouth.  The man told her not to scream or he would
kill her and her family.  The man touched
Amanda’s chest and pulled her pants off. 
He forced her to the floor and tried to “put it in” but she kept her
legs tight and closed.  The assailant
then asked her to “give him head” but she told him she did not know how to do
that.  Amanda told Armstead that the man
“put his thing in [her] mouth” and then he pushed her over and tried to put it
in again but it “went in [her] butt.” 
The man finished and told her to take a shower and he repeated his
threats to kill her family and rape her sister if she screamed or told
anyone.  Amanda ran for the bathroom and
turned on the shower.  She stuck her head
under the water and put on a robe so the man would think she had taken a
shower.  When she walked out of the
bathroom, he took off.  Amanda told
Armstead that the man had penetrated her mouth, female sexual organ, and anus.  During the physical exam, Armstead examined
Amanda from head to toe.  She found that
the back of Amanda’s head was tender and Amanda related that the assailant had
pulled her hair.  Armstead also found
multiple petechial linear bruises on the lower front part of her neck caused by
a pinching or pulling of the skin. 
Amanda also had bruising to the middle of her back consistent with her
having been pressed against something. 
Amanda had two bruises on her lower right shin.  During the genital exam, Armstead found
scratches to the labia minora with active bleeding.  She also found tearing of the hymen at the
11:00, 12:00, and 9:00 positions and a complete transsection at 3:00.  Additionally, Armstead found an obvious tear
of the fossa navicularis, which is the bottom of the vaginal opening.  Fresh blood was coming from the tears.  Armstead collected forensic evidence during
the examination, including swabs of different areas on Amanda’s body.  The evidence collected during the sexual
assault examination was later submitted for DNA testing to the Texas Department
of Public Safety Crime Laboratory.  

Sgt. Brandi Schulze of the Andrews Police Department was on patrol at
approximately 4 a.m. on December 12, 2007 when she and Officer Gerardo
Aranda were dispatched to the Gonzalez home on a burglary in progress.  The caller told the dispatcher that the
perpetrator might still be in the home and Schulze and Aranda used caution as
they entered and cleared the premises. 
Schulze spoke with Amanda and observed that she was shaking, crying, and
extremely upset.  Amanda described the
suspect as being 5’5” or 5’6” tall, small build, Hispanic, with a short haircut
and facial stubble.  She also told
Schulze that Appellant smelled of alcohol and cigarettes.  Based on Amanda’s statements about what had
occurred, Schulze gathered physical evidence, including Amanda’s pajamas and
underwear, and booked it into evidence. 
Schulze identified photographs taken that evening depicting a
partially-opened gift under the Christmas tree, lids of the kitchen canisters
on the kitchen counter, and Amanda’s jewelry box with all of its drawers
opened.  

Sgt. Jay Collingsworth of the Andrews Police Department used Amanda’s
description of the suspect to put together a photo lineup.  He showed her the lineup and asked her to
point to the person who had been in her room. 
She pointed to a photo of Appellant and said she was “55 percent
sure” it was him.  At Collingsworth’s
request, Amanda underwent hypnosis approximately one month after the sexual
assault to assist her in recalling more details about the assault and the
assailant.  That same day, Amanda
provided a description of the assailant to a forensic artist who created a
drawing of the man.  

In April 2008, Brent Hester, a forensic scientist with the DPS Crime Lab,
performed the DNA analysis on the evidence gathered during the sexual assault
examination.  He determined that the DNA
profiles were consistent with a mixture of the victim and an unknown male.  Hester entered the unknown DNA profile into
CODIS which is the Combined DNA Index System. 
The DPS Crime Lab retained the samples and DNA extracts.  Hester later obtained a “hit” on CODIS and he
relayed that information to law enforcement. 
On July 23, 2009, the police obtained a search warrant for Appellant’s
blood.  A specimen of Appellant’s blood
was submitted for DNA analysis with the evidence previously submitted to the
DPS Crime Laboratory.  Brent Hester
compared Appellant’s known DNA profile with the DNA extracted from anal,
breast, and neck swabs.  Hester
determined that Appellant could not be excluded as a contributor of the DNA
profile obtained from the sperm fraction of the anal swab.  His written report reflected that the
probability of selecting an unrelated person at random who could be a
contributor to this DNA profile is approximately 1 in 509.2 billion for
Caucasians, 1 in 15.22 trillion for Blacks, and 1 in 347.5 billion for
Hispanics.  Hester also determined that
Appellant could not be excluded as a contributor to the DNA profile obtained
from the neck and breast swabs.  

Appellant testified at trial that he met Amanda at the public library
approximately one month before the night in question and she had given him her
phone number.  Sometime after
Thanksgiving, he was giving a friend a ride when he saw Amanda outside of her house.  After he dropped off his friend, he went back
to Amanda’s house and talked to her for a few minutes.  Appellant saw her at the library a couple of
days later and they talked.  Appellant
called her on December 11 around 5 p.m. and invited her out to eat.  She said that she had other things to do but
she invited him to her house for a little while.  Appellant did not go right then but he
instead waited until 1 a.m.  He did not
knock on the door but instead threw some pebbles at her bedroom window.  Amanda looked out of her window and then opened
the door.  They went to her bedroom and
after talking for a while had consensual sex. 
Afterwards, Amanda became upset because he had talked her into having
unprotected sex and she told Appellant to leave.  Appellant admitted that in 2001 he had been convicted
of delivery of a controlled substance, forgery, burglary of a habitation, and
theft over $1,500 in Parker County, Texas. 
Although Appellant pled guilty to all four charges, he claimed that he
had only committed the burglary offense. 


            During
rebuttal, Amanda testified that she had never met or spoken to Appellant prior
to the night he sexually assaulted her and she did not invite him into her
home.  She could not have spoken to him
on the phone around 5 p.m. on December 11 as he claimed because it was a game
day and she was working as an athletic trainer at the time.  Amanda did not have her cell phone with her
because the team rules prohibited her from using her phone while working.  

            The jury rejected Appellant’s
defense and found him guilty of aggravated sexual assault as charged in the
indictment.  

DENIAL OF MOTION FOR CONTINUANCE

            In his first issue, Appellant
complains that the trial court erred by refusing to grant his motion for
continuance.  The granting or denial of a
motion for continuance is within the sound discretion of the trial court. Heiselbetz
v. State, 906 S.W.2d 500, 511
(Tex.Crim.App. 1995); see Tex.Code Crim.Proc.Ann. art.
29.03 (West 2006)(criminal action may be continued upon sufficient cause shown
in motion); Tex.Code Crim.Proc.Ann. art. 29.06(6)(sufficiency of a motion
for continuance shall be addressed to “sound discretion” of court and “shall
not be granted as a matter of right”).  Accordingly, we
review the trial court’s ruling on a motion for continuance for an abuse of
discretion.  Gallo v. State, 239 S.W.3d 757, 764 (Tex.Crim.App. 2007); Heiselbetz, 906 S.W.2d at 511.  To establish an abuse of discretion, there
must be a showing that the defendant was actually prejudiced by the denial of
his motion.  Gallo, 239 S.W.3d at 764.  When
the defendant’s motion for continuance is based on an absent witness, it is
necessary to show (1) that the defendant has exercised diligence to procure the
witness’s attendance, (2) that the witness is not absent by the procurement or
consent of the defense, (3) that the motion is not made for delay, and (4) the
facts expected to be proved by the witness. 
Harrison v. State, 187 S.W.3d
429, 434 (Tex.Crim.App. 2005); see Tex.Code Crim.Proc.Ann. art. 29.06.  It must appear to the trial court that the
facts are material.  Id.  Mere conclusions and
general averments are not sufficient for the court to determine their
materiality, and the motion for continuance must show on its face the
materiality of the absent testimony.  Harrison, 187 S.W.3d at 434.

            On September 17, 2010, the trial
court entered an order setting the case for trial on October 25, 2010.  On September 28, 2010, Appellant filed a
motion for continuance because defense counsel was set for trial in federal
court on the date set for trial.  The
record does not reflect that the court ruled on that motion.  On Friday, October 22, 2010, the trial court
conducted a brief pretrial proceeding and informed the parties that trial would
begin on Tuesday, October 26, 2010. 
Appellant filed a second motion for continuance on October 25 alleging
that a defense witness, Mario Gross, M.D., was attending a seminar in Florida
and would not return until November 3, 2010. 
The motion alleged that Dr. Gross’s testimony was material to
Appellant’s defense but it did not set forth the facts expected to be proved by
the witness.[2]  At the beginning of trial, defense counsel
addressed the motion for continuance and claimed that he had called Dr. Gross’s
office on October 22 after the pretrial proceeding and had learned that he was
out of town and would not be back until November 3.  Defense counsel argued that he could not
present a defense without the testimony of the expert witness.  The State responded that the case had been
set for several months, there had been multiple pretrial settings, and a
subpoena had not been issued for the witness. 
The trial court denied the motion and the case proceeded to trial.  Defense counsel re-urged the motion for
continuance following the testimony of the sexual assault nurse examiner, Cori
Armstead, and argued that without the expert witness, the defense could not
counter her testimony.  The defense
raised the motion again prior to Appellant’s testimony.

            Contrary to the requirements of
Article 29.06(2), Appellant’s motion for continuance does not show the
diligence which had been used to procure the witness’s attendance at
trial.  Diligence, in this context, is
the exercise of timely and persistent efforts to secure the attendance of
witnesses, using the means and agencies provided by law.  Tucker
v. State, 109 S.W.3d 517, 520 (Tex.App.--Tyler 1999, pet. ref’d), citing Edwards v. State, 148 Tex.Crim.
104, 106, 185 S.W.2d 111, 112 (1945). 
Article 29.06(2) provides that merely applying for or causing a subpoena
to issue is not sufficient diligence.  Tex.Code Crim.Proc.Ann. art. 29.06(2).  When a party
waits until a day or two before trial to cause a subpoena to be issued for a
witness, the party has failed to exercise the due diligence necessary to
support a motion for continuance.  See Peoples v. State, 477 S.W.2d 889,
891 (Tex.Crim.App. 1972)(defense did not apply for subpoena until two days
before trial); Varela v. State,
561 S.W.2d 186, 190 (Tex.Crim.App. 1978)(defendant did not apply for subpoena
for missing witness until the day before trial on merits began).  In this case, the record does not reflect
Appellant ever applied for a subpoena. 
The trial court could have reasonably concluded that simply telephoning
the witness on the Friday afternoon before testimony is scheduled to begin the
following Tuesday is not sufficient diligence. 
Accordingly, we find that the trial court did not abuse its discretion
by denying Appellant’s motion for continuance. 
See Dewberry v. State, 4
S.W.3d 735, 756 (Tex.Crim.App. 1999)(diligence not shown where defense did not
attempt to subpoena witness until after trial started); Norton v. State, 564 S.W.2d 714, 717 (Tex.Crim.App. [Panel Op.]
1978)(diligence not shown where defense did not apply for process until two
days before trial).  Issue One is
overruled.

SUFFICIENCY OF THE EVIDENCE

            In his second issue, Appellant
challenges the sufficiency of the evidence supporting his conviction.  Although Appellant cites the Court of
Criminal Appeals’ decision in Brooks v.
State, 323 S.W.3d 893 (Tex.Crim.App. 2010) and acknowledges that the evidence is not reviewable for factual
sufficiency, he nevertheless argues that the evidence is so weak that the
jury’s guilty verdict is clearly wrong and manifestly unjust and it is against
the great weight and preponderance of the evidence.  In effect, Appellant is attempting to raise a
factual sufficiency challenge.

In Brooks, the Court of
Criminal Appeals abandoned factual sufficiency review in those cases where the
burden of proof is beyond a reasonable doubt. 
Brooks, 323 S.W.3d at 894-95 (finding
no meaningful distinction between the legal and factual sufficiency standards
and no justification for retaining both standards, therefore overruling the
factual sufficiency review adopted in Clewis
v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.1996)).  The legal sufficiency standard articulated in
Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the only standard a reviewing
court applies in determining whether the evidence is sufficient to support a
conviction.  Brooks, 323 S.W.3d at 894-95. Therefore, we will review Appellant’s
factual sufficiency claim under the Jackson
legal sufficiency standard and determine whether the evidence is sufficient to
support the challenged element beyond a reasonable doubt.  See Brooks,
323 S.W.3d 894-95, citing Jackson,
443 U .S. at 319, 99 S.Ct. 2789.

            Under the Jackson standard, a reviewing court must consider all evidence in
the light most favorable to the verdict and in doing so determine whether a
rational justification exists for the jury’s finding of guilt beyond a
reasonable doubt.  Brooks, 323 S.W.3d at 894-95, citing
Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. 
As the trier of fact, the jury is the sole judge as to the weight and
credibility of witness testimony, and therefore, on appeal we must give
deference to the jury’s determinations.  Brooks, 323 S.W.3d at 894-95.  If the record contains conflicting
inferences, we must presume the jury resolved such facts in favor of the
verdict and defer to that resolution.  Id. 
On appeal, we serve only to ensure the jury reached a rational verdict,
and we may not reevaluate the weight and credibility of the evidence produced
at trial and in so doing substitute our judgment for that of the fact
finder.  King v. State, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000).  This standard applies equally to both direct
and circumstantial evidence. King v. State,
895 S.W.2d 701, 703 (Tex.Crim.App. 1995).

            The only element of aggravated
sexual assault challenged by Appellant is whether his sexual contact with the
victim was consensual.  An aggravated
sexual assault is without the consent of the other person if the actor compels
the other person to submit or participate by threatening to use force or
violence against any person and the other person believes that the actor has
the ability to execute the threat.  See Tex.Penal
Code Ann. §§ 22.011(b)(7), 22.021(c)(West
2011).  Appellant argues that the
evidence is insufficient because the jury heard two competing theories and
conflicting testimony.  This conflict in
the evidence does not render the evidence legally insufficient as it was the
jury’s task to weigh all of the evidence and resolve the credibility of the
witnesses, including that of Appellant and the victim.  While Appellant claimed that he engaged in
consensual sex with the victim, she testified that it was without her consent
because Appellant threatened to kill her family and sexually assault her
ten-year-old sister if she screamed for help. 
The evidence showed that Appellant repeated these threats whenever
Amanda tried to pull away or resist. 
When the evidence is viewed in the light most favorable to the verdict,
it supports a finding that the aggravated sexual assault was committed without
the victim’s consent as alleged in the indictment.  We overrule Issue Two and affirm the judgment
of the trial court.

 

 

February 8, 2012                                 ________________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)

 











[1]  The same jury found Appellant guilty of
aggravated sexual assault in cause number 5747. 
We affirmed Appellant’s conviction in Leonardo Mendoza v. State, No. 08-11-00052-CR (Tex.App.--El Paso Feb.
8, 2012).





[2]  Appellant attached to his motion for new trial
a transcription of Dr. Gross’s testimony from the previous trial which
apparently ended with a hung jury.