COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

LEONARDO MENDOZA,

Appellant,

v.

THE STATE OF TEXAS,

Appellee.

§
§
§
§
§
§
§
§

No. 08-11-00053-CR

Appeal from

109th District Court

of Andrews County, Texas

(TC # 5748)

## **O P I N I O N**

Leonardo Mendoza appeals his conviction of aggravated sexual assault, enhanced by a prior felony conviction. After finding Appellant guilty of the charged offense, the jury found the enhancement paragraph true and assessed his punishment at life imprisonment and a fine of $10,000.[1] We affirm.

## **FACTUAL SUMMARY**

In December of 2007, Amanda Gonzalez was eighteen years of age and in her senior year of high school in Andrews, Texas. Amanda had little free time as she was vice president of the student council, president of the band, and she also served as the head athletic trainer for the high school's sports programs, including football, baseball, and basketball. Amanda spent the evening of December 11, 2007 at her house studying with her friends Atarah Payton and Taylor Williams. At around midnight, Atarah's mother called to remind her she was supposed to be home at midnight, so Atarah and Taylor left. Amanda forgot to lock the door after her friends

---

[1] The same jury found Appellant guilty of aggravated sexual assault in cause number 5747. We affirmed Appellant's conviction in *Leonardo Mendoza v. State*, No. 08-11-00052-CR (Tex.App.--El Paso Feb. 8, 2012).

left.  She took a shower and went to bed.  Something caused Amanda to wake up during the night and when she looked toward her bedroom door, she saw a man she did not recognize standing in her room.  The man, later identified as Appellant, put his hand over her mouth and threatened to kill her family and rape her 10-year-old sister if she screamed or alerted her family to his presence.  He also told her that someone else was in the house with him.  Amanda believed Appellant and she did not fight him when he inserted his penis in her mouth.  Whenever Amanda tried to pull away, Appellant physically forced her to continue while repeating his threats to kill her family.  Appellant stopped after a while but he removed Amanda's pajamas and sexually assaulted her by forcible penetration both anally and vaginally.  When Appellant stopped, he told Amanda that he had not raped her, they had just made love.  He made Amanda put on a T-shirt and shorts and he began asking her for money.  She gave him $100 she kept in her jewelry box but he wanted more, so Amanda told Appellant that she thought her parents kept money in the kitchen canisters.  Appellant made her lead him to the kitchen and he looked in the canisters. When he did not find any money, he made her walk back down the hallway and ordered her to take a shower.  Amanda initially went into the bathroom but she continued on to her parents' adjoining bedroom and quietly told them to call the police because someone was in the house. Amanda then went into her sister's bedroom and escorted her to her parents' bedroom so she would be safe.  Amanda then returned to the bathroom and turned on the water but she did not get in the shower because she knew it would wash away evidence that could identify her assailant.  The police arrived only one to two minutes later but Appellant had already fled the scene.  Amanda gave a statement to police and she later underwent a sexual assault examination in Midland.

Cori Armstead is the director of emergency services at Midland Memorial Hospital and the sexual assault nurse examiner coordinator for Midland County. Armstead performed a sexual assault examination on Amanda Gonzalez on December 12, 2007. Part of the examination included taking a medical history from Amanda. Amanda told her that she had stayed up late the previous evening doing schoolwork and that a man entered her bedroom and put his hand over her mouth. The man told her not to scream or he would kill her and her family. The man touched Amanda's chest and pulled her pants off. He forced her to the floor and tried to "put it in" but she kept her legs tight and closed. The assailant then asked her to "give him head" but she told him she did not know how to do that. Amanda told Armstead that the man "put his thing in [her] mouth" and then he pushed her over and tried to put it in again but it "went in [her] butt." The man finished and told her to take a shower and he repeated his threats to kill her family and rape her sister if she screamed or told anyone. Amanda ran for the bathroom and turned on the shower. She stuck her head under the water and put on a robe so the man would think she had taken a shower. When she walked out of the bathroom, he took off. Amanda told Armstead that the man had penetrated her mouth, female sexual organ, and anus. During the physical exam, Armstead examined Amanda from head to toe. She found that the back of Amanda's head was tender and Amanda related that the assailant had pulled her hair. Armstead also found multiple petechial linear bruises on the lower front part of her neck caused by a pinching or pulling of the skin. Amanda also had bruising to the middle of her back consistent with her having been pressed against something. Amanda had two bruises on her lower right shin. During the genital exam, Armstead found scratches to the labia minora with active bleeding. She also found tearing of the hymen at the 11:00, 12:00, and 9:00 positions and a complete transsection at 3:00. Additionally, Armstead found an obvious tear of the fossa

navicularis, which is the bottom of the vaginal opening. Fresh blood was coming from the tears. Armstead collected forensic evidence during the examination, including swabs of different areas on Amanda's body. The evidence collected during the sexual assault examination was later submitted for DNA testing to the Texas Department of Public Safety Crime Laboratory.

Sgt. Brandi Schulze of the Andrews Police Department was on patrol at approximately 4 a.m. on December 12, 2007 when she and Officer Gerardo Aranda were dispatched to the Gonzalez home on a burglary in progress. The caller told the dispatcher that the perpetrator might still be in the home and Schulze and Aranda used caution as they entered and cleared the premises. Schulze spoke with Amanda and observed that she was shaking, crying, and extremely upset. Amanda described the suspect as being 5'5" or 5'6" tall, small build, Hispanic, with a short haircut and facial stubble. She also told Schulze that Appellant smelled of alcohol and cigarettes. Based on Amanda's statements about what had occurred, Schulze gathered physical evidence, including Amanda's pajamas and underwear, and booked it into evidence. Schulze identified photographs taken that evening depicting a partially-opened gift under the Christmas tree, lids of the kitchen canisters on the kitchen counter, and Amanda's jewelry box with all of its drawers opened.

Sgt. Jay Collingsworth of the Andrews Police Department used Amanda's description of the suspect to put together a photo lineup. He showed her the lineup and asked her to point to the person who had been in her room. She pointed to a photo of Appellant and said she was "55 percent sure" it was him. At Collingsworth's request, Amanda underwent hypnosis approximately one month after the sexual assault to assist her in recalling more details about the assault and the assailant. That same day, Amanda provided a description of the assailant to a forensic artist who created a drawing of the man.

In April 2008, Brent Hester, a forensic scientist with the DPS Crime Lab, performed the DNA analysis on the evidence gathered during the sexual assault examination. He determined that the DNA profiles were consistent with a mixture of the victim and an unknown male. Hester entered the unknown DNA profile into CODIS which is the Combined DNA Index System. The DPS Crime Lab retained the samples and DNA extracts. Hester later obtained a "hit" on CODIS and he relayed that information to law enforcement. On July 23, 2009, the police obtained a search warrant for Appellant's blood. A specimen of Appellant's blood was submitted for DNA analysis with the evidence previously submitted to the DPS Crime Laboratory. Brent Hester compared Appellant's known DNA profile with the DNA extracted from anal, breast, and neck swabs. Hester determined that Appellant could not be excluded as a contributor of the DNA profile obtained from the sperm fraction of the anal swab. His written report reflected that the probability of selecting an unrelated person at random who could be a contributor to this DNA profile is approximately 1 in 509.2 billion for Caucasians, 1 in 15.22 trillion for Blacks, and 1 in 347.5 billion for Hispanics. Hester also determined that Appellant could not be excluded as a contributor to the DNA profile obtained from the neck and breast swabs.

Appellant testified at trial that he met Amanda at the public library approximately one month before the night in question and she had given him her phone number. Sometime after Thanksgiving, he was giving a friend a ride when he saw Amanda outside of her house. After he dropped off his friend, he went back to Amanda's house and talked to her for a few minutes. Appellant saw her at the library a couple of days later and they talked. Appellant called her on December 11 around 5 p.m. and invited her out to eat. She said that she had other things to do but she invited him to her house for a little while. Appellant did not go right then but he instead waited until 1 a.m. He did not knock on the door but instead threw some pebbles at her bedroom

window. Amanda looked out of her window and then opened the door. They went to her bedroom and after talking for a while had consensual sex. Afterwards, Amanda became upset because he had talked her into having unprotected sex and she told Appellant to leave. Appellant admitted that in 2001 he had been convicted of delivery of a controlled substance, forgery, burglary of a habitation, and theft over $1,500 in Parker County, Texas. Although Appellant pled guilty to all four charges, he claimed that he had only committed the burglary offense.

During rebuttal, Amanda testified that she had never met or spoken to Appellant prior to the night he sexually assaulted her and she did not invite him into her home. She could not have spoken to him on the phone around 5 p.m. on December 11 as he claimed because it was a game day and she was working as an athletic trainer at the time. Amanda did not have her cell phone with her because the team rules prohibited her from using her phone while working.

The jury rejected Appellant's defense and found him guilty of aggravated sexual assault as charged in the indictment.

## DENIAL OF MOTION FOR CONTINUANCE

In his first issue, Appellant complains that the trial court erred by refusing to grant his motion for continuance. The granting or denial of a motion for continuance is within the sound discretion of the trial court. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex.Crim.App. 1995); *see* TEX.CODE CRIM.PROC.ANN. art. 29.03 (West 2006)(criminal action may be continued upon sufficient cause shown in motion); TEX.CODE CRIM.PROC.ANN. art. 29.06(6)(sufficiency of a motion for continuance shall be addressed to "sound discretion" of court and "shall not be granted as a matter of right"). Accordingly, we review the trial court's ruling on a motion for continuance for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex.Crim.App. 2007); *Heiselbetz*, 906 S.W.2d at 511. To establish an abuse of discretion, there must be a

showing that the defendant was actually prejudiced by the denial of his motion. *Gallo*, 239 S.W.3d at 764. When the defendant's motion for continuance is based on an absent witness, it is necessary to show (1) that the defendant has exercised diligence to procure the witness's attendance, (2) that the witness is not absent by the procurement or consent of the defense, (3) that the motion is not made for delay, and (4) the facts expected to be proved by the witness. *Harrison v. State*, 187 S.W.3d 429, 434 (Tex.Crim.App. 2005); *see* TEX.CODE CRIM.PROC.ANN. art. 29.06. It must appear to the trial court that the facts are material. *Id.* Mere conclusions and general averments are not sufficient for the court to determine their materiality, and the motion for continuance must show on its face the materiality of the absent testimony. *Harrison*, 187 S.W.3d at 434.

On September 17, 2010, the trial court entered an order setting the case for trial on October 25, 2010. On September 28, 2010, Appellant filed a motion for continuance because defense counsel was set for trial in federal court on the date set for trial. The record does not reflect that the court ruled on that motion. On Friday, October 22, 2010, the trial court conducted a brief pretrial proceeding and informed the parties that trial would begin on Tuesday, October 26, 2010. Appellant filed a second motion for continuance on October 25 alleging that a defense witness, Mario Gross, M.D., was attending a seminar in Florida and would not return until November 3, 2010. The motion alleged that Dr. Gross's testimony was material to Appellant's defense but it did not set forth the facts expected to be proved by the witness.[2] At the beginning of trial, defense counsel addressed the motion for continuance and claimed that he had called Dr. Gross's office on October 22 after the pretrial proceeding and had learned that he was out of town and would not be back until November 3. Defense counsel argued that he could

---

[2] Appellant attached to his motion for new trial a transcription of Dr. Gross's testimony from the previous trial which apparently ended with a hung jury.

not present a defense without the testimony of the expert witness. The State responded that the case had been set for several months, there had been multiple pretrial settings, and a subpoena had not been issued for the witness. The trial court denied the motion and the case proceeded to trial. Defense counsel re-urged the motion for continuance following the testimony of the sexual assault nurse examiner, Cori Armstead, and argued that without the expert witness, the defense could not counter her testimony. The defense raised the motion again prior to Appellant's testimony.

Contrary to the requirements of Article 29.06(2), Appellant's motion for continuance does not show the diligence which had been used to procure the witness's attendance at trial. Diligence, in this context, is the exercise of timely and persistent efforts to secure the attendance of witnesses, using the means and agencies provided by law. *Tucker v. State*, 109 S.W.3d 517, 520 (Tex.App.--Tyler 1999, pet. ref'd), *citing Edwards v. State*, 148 Tex.Crim. 104, 106, 185 S.W.2d 111, 112 (1945). Article 29.06(2) provides that merely applying for or causing a subpoena to issue is not sufficient diligence. TEX.CODE CRIM.PROC.ANN. art. 29.06(2). When a party waits until a day or two before trial to cause a subpoena to be issued for a witness, the party has failed to exercise the due diligence necessary to support a motion for continuance. *See Peoples v. State*, 477 S.W.2d 889, 891 (Tex.Crim.App. 1972)(defense did not apply for subpoena until two days before trial); *Varela v. State*, 561 S.W.2d 186, 190 (Tex.Crim.App. 1978)(defendant did not apply for subpoena for missing witness until the day before trial on merits began). In this case, the record does not reflect Appellant ever applied for a subpoena. The trial court could have reasonably concluded that simply telephoning the witness on the Friday afternoon before testimony is scheduled to begin the following Tuesday is not sufficient diligence. Accordingly, we find that the trial court did not abuse its discretion by denying

Appellant's motion for continuance.  *See Dewberry v. State*, 4 S.W.3d 735, 756 (Tex.Crim.App. 1999)(diligence not shown where defense did not attempt to subpoena witness until after trial started); *Norton v. State*, 564 S.W.2d 714, 717 (Tex.Crim.App. [Panel Op.] 1978)(diligence not shown where defense did not apply for process until two days before trial).  Issue One is overruled.

### SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant challenges the sufficiency of the evidence supporting his conviction.  Although Appellant cites the Court of Criminal Appeals' decision in *Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010) and acknowledges that the evidence is not reviewable for factual sufficiency, he nevertheless argues that the evidence is so weak that the jury's guilty verdict is clearly wrong and manifestly unjust and it is against the great weight and preponderance of the evidence.  In effect, Appellant is attempting to raise a factual sufficiency challenge.

In *Brooks*, the Court of Criminal Appeals abandoned factual sufficiency review in those cases where the burden of proof is beyond a reasonable doubt.  *Brooks*, 323 S.W.3d at 894-95 (finding no meaningful distinction between the legal and factual sufficiency standards and no justification for retaining both standards, therefore overruling the factual sufficiency review adopted in *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996)).  The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction.  *Brooks*, 323 S.W.3d at 894-95. Therefore, we will review Appellant's factual sufficiency claim under the *Jackson* legal sufficiency standard and determine

whether the evidence is sufficient to support the challenged element beyond a reasonable doubt. *See Brooks*, 323 S.W.3d 894-95, *citing Jackson*, 443 U .S. at 319, 99 S.Ct. 2789.

Under the *Jackson* standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id*. On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). This standard applies equally to both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995).

The only element of aggravated sexual assault challenged by Appellant is whether his sexual contact with the victim was consensual. An aggravated sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by threatening to use force or violence against any person and the other person believes that the actor has the ability to execute the threat. *See* TEX.PENAL CODE ANN. §§ 22.011(b)(7), 22.021(c)(West 2011). Appellant argues that the evidence is insufficient because the jury heard two competing theories and conflicting testimony. This conflict in the evidence does not render the evidence legally insufficient as it was the jury's task to weigh all of the evidence and resolve the credibility of the witnesses, including that of Appellant and the victim. While Appellant

claimed that he engaged in consensual sex with the victim, she testified that it was without her consent because Appellant threatened to kill her family and sexually assault her ten-year-old sister if she screamed for help. The evidence showed that Appellant repeated these threats whenever Amanda tried to pull away or resist. When the evidence is viewed in the light most favorable to the verdict, it supports a finding that the aggravated sexual assault was committed without the victim's consent as alleged in the indictment. We overrule Issue Two and affirm the judgment of the trial court.


February 8, 2012                     _____
                                     ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)