ACCEPTED
06-15-00112-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/21/2015 6:55:02 PM
DEBBIE AUTREY
CLERK

## No. 06-15-00112-CR

## IN THE COURT OF APPEALS

### FOR THE

### SIXTH JUDICIAL DISTRICT OF TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/22/2015 8:40:00 AM
DEBBIE AUTREY
Clerk

### JEROME ANDERSON,

**Appellant**

### V

### THE STATE OF TEXAS

**Appellee**

### APPEALED FROM THE 71st DISTRICT COURT

### HARRISON COUNTY, TEXAS

### TRIAL COURT CAUSE #12-0427X

### BRIEF OF STATE

COKE SOLOMON
CRIMINAL DISTRICT ATTORNEY
HARRISON COUNTY, TEXAS
P.O. BOX 776
MARSHALL, TEXAS 75671
(903) 935-8408

BY:     SHAWN ERIC CONNALLY
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BAR #24051899
ATTORNEY FOR THE STATE

### APPELLEE DOES NOT REQUEST ORAL ARUGMENT

i

No. 06-15-00112-CR

JEROME ANDERSON
Appellant

V

THE STATE OF TEXAS
Appellee

_____

**NAMES OF ALL PARTIES AND ATTORNEYS**
_____

The names and identifying information of all parties and attorneys were correctly stated in Appellant's brief.

# TABLE OF CONTENTS

NAMES OF ALL PARTIES AND ATTORNEYS ................................................. ii

INDEX OF AUTHORITIES ...........................................................................iv-viii

PRELIMINARY STATEMENT OF THE NATURE OF THE CASE ....................1

    STATE'S REPLY ISSUE ONE: ……………………….……1

    STATE'S REPLY ISSUE TWO………………………….…..1

    STATE'S REPLY ISSUE THREE…………………….………2

STATEMENT OF THE FACTS ........................................................................2

ARGUMENTS AND AUTHORITIES ...............................................................5

    SUMMARY OF THE ARGUMENT REPLY ISSUE ONE.........................5

        ARGUMENTS AND AUTHORITIES REPLY ISSUE ONE..............5

    SUMMARY OF THE ARGUMENT REPLY ISSUE TWO…………...…16

        ARGUMENTS AND AUTHORITIES REPLY ISSUE TWO……...16

    SUMMARY OF THE ARGUMENT REPLY ISSUE THREE ………...…26

        ARGUMENTS AND AUTHORITY REPLY ISSUE THREE…..…26

PRAYER ...........................................................................................................41

CERTIFICATE OF SERVICE .........................................................................41

**INDEX OF AUTHORITIES**

**CASES:**

*Lumsden v. State*, 384 S.W.2d 143, 144 (Tex.Crim.App. 1964)…………….……6

*Lincoln v. State*, 307 S.W.3d 921, 922 (Tex.App.-Dallas 2010, no pet.)………...6-7

*Garcia v. State*, 13-09-00650-CR (Corpus Christi, unpublished opinion, 2010)...6-7

*Breazeale v State*, 683 S.W.2d 446, 450-51 (Tex.Crim.App.1984)………….....….6-7

*Osteen v. State*, 642 S.W.2d 169, 171 (Tex.Crim.App. 1982)………………..….…7

*Brooks v. State*, 06-03-00073, Texarkana unpublished opinion, 2004)………….....7

*Valle v. State*, 109 S.W.3d 500, 509 (Tex.Crim.App. 2003)………………………8

*Blount v State*, 64 S.W.3d 451, 457 (Tex.App.-Texarkana 2001, no pet.)……...….9

*Hernandez v State*, 387 S.W.3d 881, 888 (Tex.Crim.App. 2012)……………....9-12

*Leza v. State*, 351 S.W.3d 344, 349 (Tex.Crim.App. 2011)………………………..9

*Gonzales v. State*, 369 S.W.3d 851, 852 (Tex.Crim.App. 2012)……………..…10

*Lampkin v. State*, 470 S.W.3d at 895 (Tex.App.-Texarkana 2015)…………...10-13

*Delao v. State*, 235 S.W.3d 235, 238 (Tex.Crim.App. 2007)……………………..10

*Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.ct. 1602, 16 L.Ed.2d 694 (1966)……………………………………………………………………………10-12

*Coffey v. State*, 435 S.W.3d 834, 841 (Tex.App.-Texarkana 2014, pet. ref'd)…...10

*Hutchinson v. State*, 424 S.W.3d 164, 175 (Tex.App.-Texarkana 2014, no pet.)...10

*Joseph v. State* 309, S.W.3d 20, 23 (Tex.Crim.App. 2010)……………..……11-14

*Watson v State*, 762 S.W.2d 591, 601 (Tex.Crim.App.1988)……………………12

*North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)………………………………………………………………………12-13

*Berghuis v. Thompkins*, -U.S.-, 130 S.Ct. 2250, 2261, 176 L.Ed.2d 1098 (2010)……………………………………………………………………13-14

*Ford v. State,* 305 S.W.3d 530, 533 (Tex.Crim.App. 2009)……………..……17-18

*Lankston v. State,* 827 S.W.2d 907, 911 (Tex.Crim.App. 1992)…………………18

*Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App. 2002)………………..…18

*Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990)…………………...18

*Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App.1995)………………...18

*Garza v. State*, 453 S.W.3d 548, 554 (Tex.App.-San Antonio 2014, pet. ref'd)….19

*Osbourn v. State*, 59 S.W.3d 809, 815 (Tex.App.-Austin 2001, no pet.)…………19

*Clay v. State*, 390 S.W.3d 1, 15 (Tex.App-Texarkana 2012, pet. ref'd)…………20

*Gallo v. State*, 239 S.W.3d 757, 764 (Tex.Crim.App. 2007)………………..20

*Gonzales v. State*, 304 S.W.3d 838, 843 (Tex.Crim.App. 2010)…………………20

*Harrison v. State*, 187 S.W.3d 429 (Tex.Crim.App. 2005)………………………21

*Tucker v. State*, 109 S.W.3d 517, 520 (Tex.App.-Tyler 1999 pet. ref'd)…………22

*Johnson v. State*, 467 S.W.2d 247, 250 (Tex.Crim.App.1971)………………....22

*Edwards v. State*, 185 S.W.2d 111, 112 (Tex.1945)…………………………...22

*Norton v. State*, 564 S.W.2d 714, 716-17 (Tex.Crim.App.1978)…………………22

*Maxwell v. State*, 06-12-00194-CR (Texarkana, unpublished opinion Feb. 12, 2014)……………………………………………………………………………....23

*Rodriguez v. State*, 21 S.W.3d 562, 566 (Tex.App.-Houston [14th Dist.] 2000, no pet.)………………………………………………………………………………..23

*Martinez v. State*, 867 S.W.2d 30, 39 (Tex.Crim.App. 1993)………………….24

*Latham v. State*, 20. S.W.3d 63, 67 (Tex.App.-Texarkana 2000)………………...25

*Gonzales v. State*, 505 S.W.2d 819 (Tex.Crim.App.1974)………………………..25

*Reese v. State*, 905 S.W.2d 631, 636 (Tex.App.-Texarkana 1995, pet. ref'd, untimely filed)…………………………………………………………………….…25

*James v. State,* 997 S.W.2d 898, 901 n. 5 (Tex.App.—Beaumont 1999, no pet.)..26

*Yarbrough v. State*, 57 S.W.3d 611, 616 (Tex.App.-Texarkana 2001, no pet.)…..27

*Sabine Offshore Serv., Inc. v. City of Port Arthur,* 595 S.W.2d 840 (Tex.1979)…27

*In re Marriage of Murray,* 15 S.W.3d 202, 204 n. 3 (Tex.App.—Texarkana 2000, no pet.)………………………………………………………………...………..27

*Taylor v. State*, 93 S.W.3d 487, 502 (Tex.App.-Texarkana 2002, pet. ref'd)……………………………………………………………….28, 31, 34, 37-38

*Williams v. State*, 995 s.W.2d 754, at 762 (Tex.App.-San Antonio 1999, no pet.)……………………………………………………………………………..28

*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)……..….28

*Thomas v. State*, 841 S.W.2d 399 (Tex.Crim.App.1992)……………...28-29, 36-38

*Pena v State*, 353 S.W.3d 797, 809 (Tex.Crim.App. 2011)…………....29-31, 37, 40

*United States v. Bagley*, 473 U.S 667, 105 S.Ct. 3375, 87 L.Ed.2d 481, 676 (1985)………………………………………………………………………….29

*Dalbosco v. State,* 978 S.W.2d 236, 239 (Tex.App.-Texarkana 1998, pet. ref'd)...29

*Ex parte Mitchell,* 977 S.W.2d 575, 578 (Tex.Crim.App.1997)………………….29

*Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)……29-30

*United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed2d 342 (1976)….30, 38

*Hampton v. State*, 86 S.W.3d 603, 613 (Tex.Crim.App. 2002)…………………...30

*Hafdahl v. State*, 805 S.W.2d 396, 399 n. 3 (Tex.Crim.App. 1990)…………...…30

*Harm v. State*, 183 S.W.3d 403, 407 (Tex.Crim.App. 2006)……………………..31

*Staten v. State*, 919 S.W.2d 493, 498 (Tex.App.-Fort Worth 1996, pet. ref'd)…...31

*Flores v. State*, 940 S.W.2d 189, 191 (Tex.App.San Antonio 1996, no pet.)…….31

*Williams v. State,* 995 S.W.2d 754, 761–62 (Tex.App.-San Antonio 1999, no pet.)……………………………………………………………………………….31

*State v. Moore*, 240 S.W.3d 324 (Tex.App.- Austin 2007, pet. ref'd)……………33

*Shanks v. State*, 13 S.W.3d 83, 86 (Tex.App.-Texarkana 2000, no pet.)………....33

*Chandler v. State*, 278 S.W.3d 70, 74 (Tex.App.-Texarkana 2009, no pet)…..36-37

*Ex parte Kimes*, 872 S.W.2d 700, 702 (Tex.Crim.App. 1993)…………………...37

*Hampton v. State*, 86 S.W.3d 603, 613 (Tex.Crim.App. 2002)…………………...37

*Strickland v. Washington*, 466 U.S.668, 696, 104 S.Ct. 2052, 90 L.Ed.2d 674 (1984)………………………………………………………………………...…38

*Ex Parte Mitchell*, 977 S.W.2d 575, 578 (Tex.Crim.App. 1997)……………...…40

vii

**STATUTES AND AMENDMENTS:**

TEX.R.APP.P.33.1 …………………………………………………………....17

Article 38.22 § 6, TEXAS CODE OF CRIMINAL PROCEDURE………………..8

Article 38.22, § 2, TEXAS CODE OF CRIMINAL PROCEDURE……………...11

Article 38.22, § 3, TEXAS CODE OF CRIMINAL PROCEDURE……………...11

Article 29.06, TEXAS CODE OF CRIMINAL PROCEDURE…………………..21

Article 39.14, TEXAS CODE OF CRIMINAL PROCEDURE…………………..19

TEX.CODE.CRIM.PROC.ANN.art.39.14 (h) historical note [Act of May 14, 2013, 83rd Leg., R.S., ch. 49, Sec. 3, 2013 Tex. Sess. Law. Serv. 106,108]……….….19

Texas Government Code Section 602.002(2)…………………………………..21

Article 29.03, TEXAS CODE OF CRIMINAL PROCEDURE…………….……21

TEX.R.APP.P 34.1…………………………………………………………….…26

**PRELIMINARY STATEMENT OF THE NATURE OF THE CASE**

Appellant preliminary statement of the case is correct.

**STATE'S REPLY ISSUE ONE**

The trial court did not commit reversible error in admitting state's exhibit 16 and 17 (the custodial interview of the Appellant). The requirements of article 38.22 of the Texas Code of Criminal Procedure were met and the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension to conclude that the Appellant waived his rights under *Miranda* and Article 38.22.

**STATES REPLY ISSUE TWO**

The trial court did not abuse its discretion in denying Appellant's motion for continuance. Appellant's motion for continuance did not comply with requirements of Article 29.06 and Appellant did not exercise due diligence in securing the attendance of a witness for trial. Furthermore, pursuant to Article 39.14 of the Texas Code of Criminal Procedure, the state was under no duty to provide Appellant with a witness list, nor update that information. There was no violation for failure to provide exculpatory

1

information under *Brady v. Maryland*, nor was that alleged error preserved for appellate review.

## STATES REPLY ISSUE THREE

The state did not commit a *Brady* violation. This issue was not properly preserved for appellate review and assuming arguendo it was, the state: 1) did not suppress or fail to disclose any exculpatory or mitigating evidence, 2) the evidence was not favorable to the Appellant, and 3) the evidence was not material to the Appellant. Also, in Appellant's brief he writes issue number three deals with the failure to disclose the identity of the confidential informant. (Appellant's brief p. 2). However, issue number three is actually briefed as a *Brady* violation. (Appellant's brief p. 15). This is confusing to the author, so the state will limit argument to Appellant's alleged *Brady* violation.

## STATEMENT OF THE FACTS

The Marshall Police Department executed a search warrant on Appellant's residence on September 23, 2011 (RR Vol. 2, p. 33). This search warrant was obtained by Officer Lynn Ames with the Marshall Police Department based on information supplied by a confidential informant that observed Appellant in possession of cocaine and marijuana. (RR Vol. 5, state's ex. 1). After Appellant's arrest he was read his rights by Brody West, a narcotics investigator with the

2

Marshall Police Department. (RR Vol. 1, p.169). The majority of the interview was conducted by Investigator Joe Bounds with the Harrison County District Attorney's Office (RR Vol. 1, p. 170). Appellant was read his rights, understood those rights, and voluntarily waived his rights. (RR Vol. 1, p.170). Appellant then proceeded to confess to being in possession of the cocaine that was found in his residence (RR Vol. 5, state's ex. 16-17).

Two and a half years later, Appellant's trial counsel filed a motion for continuance three days before trial for want of a witness, namely, Brody West, and violation of article 39.14 on April 24, 2015, three days before trial. (CR. Vol. 1, p. 108-110). The trial court heard Appellant's motion for continuance before the trial began and it was denied. (RR Vol. 2, p 15-28). Brody West was described by Appellant's counsel as a "key witness" (RR Vol. 2, p. 15). Appellant's counsel was the first person to bring to the trial court's attention that Brody West was "exculpatory" and "I believe he's got some history that would be relevant to this case for many reasons. (RR Vol. 2, p. 17-18). It was "long known" that Brody West no longer worked for the Marshall Police Department. (RR Vol. 2, p. 16). Appellant's trial counsel had known the state was not going to call Brody West from the filing of the first state's witness list (RR Vol. 2, p. 16, 20). During the motion for continuance and throughout the trial it was brought to the court's

3

attention (either by way of argument to the trial court or testimony of two witnesses) that potential witness, Brody West, was under Federal investigation. (RR Vol. 2, p. 92-96, 104-105, 174-178). The state was unaware of what Brody West was being charged with other than what had been reported in the newspaper, and had no information regarding how the federal investigation was related to Appellant's case. (RR Vol. 2, p. 27). Appellant waited until the 5 days before trial to issue a subpoena for Brody West. (RR Vol. 2, p. 16). Brody West was never served with a subpoena, nor called as a witness.

Appellant was tried and convicted and given a 15 year prison sentence. (CR Vol. 1(A) p.4-5). A motion for new trial was heard on July 13, 2015 in which Appellant alleged "new evidence" and re-urged denial of his motion for continuance. (RR Vol. 4, p. 4-6). Again, Brody West was neither subpoenaed nor called as a witness by Appellant at his motion for new trial, and no additional evidence was offered related to the Federal investigation of Brody West.

## ARGUMENTS AND AUTHORITIES

## SUMMARY OF THE ARGUMENT REPLY ISSUE ONE

The trial court did not commit reversible error in admitting state's exhibit 16 and 17 (the custodial interview of the Appellant). The requirements of article 38.22 of the Texas Code of Criminal Procedure were met and the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension to conclude that the Appellant waived his rights under *Miranda* and Article 38.22.

## ARGUMENTS AND AUTHORITIES REPLY ISSUE ONE

It is undisputed in this case that after Appellant was placed under arrest he was subjected to a custodial interrogation. It is also undisputed that the Appellant was read his rights according to Article 38.22, § 2 of the Texas Code of Criminal Procedure. Appellant's argument is succinctly that law enforcement never obtained an "explicit or implied waiver" of those rights under Article 38.22, § 3 before proceeding with the interrogation. The state disagrees with Appellant's conclusion that the Appellant did not waive his rights under *Miranda* and Article 38.22.

5

The state, in its ethical duty, feels it is necessary to address (though not objected to, nor briefed as a points of error by the Appellant) two issues; first, that the record is silent as to whether the Appellant pled "not guilty" to the indictment and second, that there is not a statement on the record from the trial judge that state's trial exhibits 16 and 17 were officially "admitted" as exhibits.

"It is well settled in this state that a plea must be entered in every criminal case and if no plea is entered, the trial is a nullity, since there is no issue for the jury or the court." *Lumsden v. State*, 384 S.W.2d 143, 144 (Tex.Crim.App. 1964) (See also *Lincoln v. State*, 307 S.W.3d 921, 922 (Tex.App.-Dallas 2010, no pet.) and *Garcia v. State*, 13-09-00650-CR (Corpus Christi, unpublished opinion, 2010). An examination of the record is silent as to whether or not the Appellant pled not guilty. However, the judgment indicates Appellant pled "not guilty" to the indictment. (CR. Vol. 1(A), p. 4-5). Recitals in a judgment create a "presumption of regularity and truthfulness" and these recitals are binding unless there is direct proof of their falsity. *Lincoln* at 922 (citing *Breazeale v State*, 683 S.W.2d 446, 450-51 (Tex.Crim.App.1984). A second presumption operates in these circumstances as well: unless the record affirmatively shows the contrary, our appellate rules require us to presume [the defendant] pleaded to the indictment. *Lincoln* at 922. See. TEX.R.APP. P. 44.2(c)(4). Like the defendant in *Lincoln*, here

6

Appellant took the position he was not guilty, and Appellant's counsel even asked the trial court for a judgment of acquittal and, in lieu of that, the minimum sentence of 15 years (RR Vol. 3, p. 6-7), which the trial court ultimately did do.

There is nothing in the appellate record to indicate that the appellant did not plea not guilty. A silent record will not suffice as an affirmative showing and thus will not overcome presumptions of regularity. *Lincoln* at 932 (citing *Breazeale*, 683 S.W.2d at 450) (see also *Osteen v. State*, 642 S.W.2d 169, 171 (Tex.Crim.App. 1982)). When a judgment contains a recital … "the burden is on the accused to establish otherwise, if she claims the contrary is true." *Lincoln* at 924 (citing *Breazeale*, 683 S.W.2d at 451). Appellant does not assert that he never entered a plea, and the record does not affirmatively refute that he did not enter a plea, therefore it must be presumed that Appellant pled to the indictment. See also *Brooks v. State*, 06-03-00073, Texarkana unpublished opinion, 2004).

Secondly, there was an objection lodged when state's 16 and 17 were offered. (RR Vol. 2, p. 172). The trial court said it would review the videos and if it determined that the evidence was not admissible, that the court would not consider it. (RR Vol 2, p.173). Later before assessing Appellant's sentence, the trial court stated it reviewed the exhibits and based on its review then proceeded to dictate into the record its findings of fact and conclusions of law that the Appellant waived

7

his rights before speaking with law enforcement, afterwards no further objection or comment was raised by Appellant's trial counsel (RR Vol. 3, p. 9), the state would argue this would serve as a *de facto* overruling of Appellant's objection and that the evidence was properly admitted. Furthermore, the trial court went further and stated even should the evidence have been improperly admitted and considered, it still believed the evidence was sufficient to support a finding of the Appellant's guilt based on the remainder of the evidence presented by the state. (RR. Vol. 3, p. 9-10). Appellant never obtained an adverse ruling on his objection to state's exhibits 16 and 17, and therefore such matters are not properly preserved for appellate review. In order to preserve error in admitting evidence, a party must make a proper objection and secure a ruling on that objection. See TEX.R.APP.P.33.1; see also *Valle v. State*, 109 S.W.3d 500, 509 (Tex.Crim.App. 2003).

As stated previously, the trial court dictated (albeit briefly) its findings of fact and conclusions of law into the record in this case. (RR. Vol. 3 p. 9) and while there was no formal separate written findings of fact and conclusions of law issued by the trial court, this Appellate Court has agreed with several of its sister courts' that when findings of fact and conclusions of law are dictated into the appellate record without objections, that sufficient compliance with Article 38.22 § 6 is

obtained. See *Blount v State*, 64 S.W.3d 451, 457 (Tex.App.-Texarkana 2001, no pet.). Should this Court believe that the dictated findings of fact and conclusions of law are inadequate to make an ultimate legal determination, the state would argue that the Court of Criminal Appeals has ruled that there is support for the proposition that there must first be a disputed fact issue and evidence presented on that issue in order for abatement and remand to be necessary. See *Hernandez v State*, 387 S.W.3d 881, 888 (Tex.Crim.App. 2012). Here, as in the *Hernandez* case, the facts of the custodial interrogation are not in dispute. The point in dispute is whether a waiver of Appellant's *Miranda* and Article 38.22 rights can be implied under those facts. Since this is an issue involving a mixed question of law and fact, this Court would review de novo, and more specific findings by the trial court would be unnecessary. See *Hernandez*, 387 S.W.3d at 888. However, as previously stated above, this issue was also never objected to, nor briefed as a point of error by Appellant, only addressed by the state out of an abundance of caution.

Moving on to Appellant's point of error number one, Appellate courts defer to the trial court's determinations on historical facts and credibility, but review de novo questions of law and mixed questions of law and fact not turning on credibility assessments. *Hernandez*, 387 S.W.3d at 885 (citing *Leza v. State*, 351 S.W.3d 344, 349 (Tex.Crim.App. 2011). Viewing the evidence in the light most

9

favorable to the trial court's ruling, it will be upheld if it is correct under any theory or law applicable to the case. *Hernandez*, 387 S.W.3d at 885 (citing *Gonzales v. State*, 369 S.W.3d 851, 852 (Tex.Crim.App. 2012)). A trial court's decision on this matter will only be overturned on appeal where a flagrant abuse of discretion is shown. *Lampkin v State*, 470 S.W.3d 876, 891 (Tex.App.-Texarkana 2015) (citing *Delao v. State*, 235 S.W.3d 235, 238 (Tex.Crim.App. 2007).

The state concedes that Appellant was under arrest at the time of his interview and any statements made are the result of custodial interrogation. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. *Lampkin v. State*, 470 S.W.3d at 891 (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.ct. 1602, 16 L.Ed.2d 694 (1966); see also *Coffey v. State*, 435 S.W.3d 834, 841 (Tex.App.-Texarkana 2014, pet. ref'd). Under both the Federal constitutional standard and the Texas Confession Statute, evidence obtained as a result of a custodial interrogation is inadmissible unless the state proves the officer gave proper warnings and shows an affirmative waiver of rights by the accused. *Coffey*, 435 S.W.3d at 841 (quoting *Hutchinson v. State*, 424 S.W.3d 164, 175 (Tex.App.-Texarkana 2014, no pet.)).

Article 38.22, § 2 of the Texas Code of Criminal Procedure requires an officer to warn a defendant that:

(1)  he has the right to remain silent and not make statement at all and that any statement he makes may be used as evidence against him at his trial

(2)  any statement he makes may be used as evidence against him in court;

(3)  he has the right to have a lawyer present to advise him prior to and during any questioning;

(4)  if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning;

(5)  he has the right to terminate the interview at any time

As stated above, Appellant does not dispute that he was read his rights in accordance with article 38.22 § 2 of the Texas Code of Criminal Procedure, only that the defendant did not "waive" those rights under article 38.22, § 3 of the Texas Code of Criminal Procedure.

The state has the burden of establishing a knowing, intelligent, and voluntary waiver of one's rights under *Miranda* and Article 38.22. *Hernandez*, 387 S.W.3d at 885 (citing *Miranda*, 384 U.S. 436, 86 S.ct. 1602, 16 L.Ed.2d 694 (1966); *Joseph*

11

*v. State* 309, S.W.3d 20, 23 (Tex.Crim.App. 2010)). Waiver must be proven by a preponderance of the evidence. *Hernandez*, 387 S.W.3d at 885 (citing *Miranda*, 384 U.S. 436, 86 S.Ct. 1602; *Joseph*, 309 S.W.3d at 24.) Without a valid waiver, a defendant's statement is generally inadmissible. *Joseph*, 309 S.W.3d at 24. While it is true that a waiver cannot be presumed simply from an accused's silence or the fact that a confession was made after warnings were provided, "the general rule is that neither a written nor an oral express waiver is required." *Hernandez*, 387 S.W.3d at 885 (citing *Watson v State*, 762 S.W.2d 591, 601 (Tex.Crim.App.1988)). A waiver need not assume a particular form and, in some case, a "waiver can clearly be inferred from the actions and words of the person integrated." *Watson*, 762 S.W.2d at 601 (citing *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)).

"The question is not whether [a defendant] 'explicitly' waived his *Miranda* rights, but whether he did so knowingly, intelligently, and voluntarily." *Lampkin v State*, 470 S.W.3d at 893 (quoting *Joseph*, 309 S.W.3d at 25). "To answer this question, we must determine (1) whether " 'the relinquishment of the right … was the product of a free and deliberate choice rather than intimidation, coercion or deception' " and (2) whether the waiver was " 'made with full awareness of both the nature of the right being abandoned and the consequences of the decision to

12

abandon it.' " *Lampkin*, 470 S.W.3d at 893 (citing *Joseph*, 309 S.W.3d at 25). " 'Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.' " *Lampkin*, 470 S.W.3d at 893 (citing *Joseph*, 309 S.W.3d at 25).

In determining whether there was a valid waiver … we must look to the totality of the circumstances, "including the background, experience, and conduct of the accused." *Hernandez*, 387 S.W.3d at 885 (citing *North Carolina v. Butler*, 441 U.S. 369, 374-75, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *Joseph*, 309 S.W.3d at 25). A waiver can be expressly made or implied by the accused's conduct. *Joseph*, 309 S.W.3d at 24. An implied waiver of one's rights is established upon a showing that the accused: (1) was given the proper warnings; (2) understood the warnings and their consequences; and (3) made an uncoerced statement. *Hernandez*, 387 S.W.3d at 885 (citing *Berghuis v. Thompkins*, -U.S.-, 130 S.Ct. 2250, 2261, 176 L.Ed.2d 1098 (2010)) "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a matter inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis*, 130 S.Ct. at 2262. Simply making a statement is often the kind of conduct viewed as indicative of one's

13

intention to waive her rights. *See Berghuis*, 130 S.Ct. at 2262; *Joseph*, 309 S.W.3d at 25 n.7.

Much like the defendant in the *Joseph* case, an examination of state's exhibit 16 and 17 reveals at no time during Appellant's custodial interview did Appellant request an attorney and at no time did Appellant ask that the interview be stopped. Furthermore, the record shows no evidence of intimidation or coercion of Appellant, nor did law enforcement ever promise Appellant anything in exchange for providing a statement. (RR Vol. 2, p. 170). In fact, during the entire one hour and twenty-six minute interview, the state would characterize the interview as cordial and non-intimidating, with Appellant freely conversing with law enforcement about the narcotics found in the Appellant's home. Appellant stated he understood his rights and agreed to speak with law enforcement. (RR Vol. 2, p. 170). After being read each of the required warnings under 38.22 § 2, the Appellant either nodded his head in the affirmative that he understood or stated an affirmative verbal response that he understood his rights, and at the conclusion of the reading of his rights Appellant also nodded in the affirmative he understood all of the rights that had been read to him. (state's exhibit 16 at 1:15 – 1:43). Appellant also indicated to law enforcement that he was a college educated man. (state's exhibit 16 at 6:48 - 6:52). The court noted in its findings of fact and

conclusions of law that based on the Appellant's level of education, that the Appellant voluntarily waived his *Miranda* and Article 38.22 rights. (RR Vol. 3, p.9). It is the state's contention that it is clear from a review of state's exhibit 16 and 17 that Appellant's statement was free of any type of coercion from law enforcement.

The totality of the circumstances surrounding Appellant's interrogation shows that Appellant's wavier was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. The warnings read to Appellant fully complied with the requirements of both *Miranda* and Article 38.22 as well as informed the Appellant of the consequences of waiving those rights.

Looking at the totality of the circumstances, Appellant's conduct during the custodial interrogation clearly supported the trial court's conclusion that Appellant had the requite level of comprehension to waive his *Miranda* and Article 38.22 rights, and did in fact knowingly, intelligently, and voluntarily waive those rights. Therefore the trial court did not abuse its discretion in ruling that the Appellant waived his rights under *Miranda* and Article 38.22.

## SUMMARY OF THE ARGUMENT REPLY ISSUE TWO

The trial court did not abuse its discretion in denying Appellant's motion for continuance. Appellant's motion for continuance did not comply with requirements of Article 29.06 and Appellant did not exercise due diligence in securing the attendance of a witness for trial. Furthermore, pursuant to Article 39.14 of the Texas Code of Criminal Procedure, the state was under no duty to provide Appellant with a witness list, nor update that information. There was no violation for failure to provide exculpatory information under *Brady v. Maryland*, nor was that alleged error preserved for appellate review.

## ARGUMENTS AND AUTHORITIES REPLY ISSUE TWO

Appellant's main contention on appeal is that the state failed to provide an address for a potential witness, and a violation of the state's duty to provide exculpatory and mitigating evidence. However Appellant's written motion for continuance and oral objections made during Appellant's motion argue that a failure to provide an address for a potential witness and possible exculpatory and mitigating evidence are both violations of Article 39.14 of the Texas Code of Criminal Procedure. (CR Vol. 1, p. 108). The state disagrees with Appellant's

16

assertion, and would further argue that the issue now raised on appeal (a *Brady v. Maryland* violation) does not comport with the arguments made during Appellant's motion for continuance and is therefore not properly preserved for appellate review, and even if it was properly preserved, is meritless. In addition, Appellant's motion for continuance does not comply with Article 29.06 of the Texas Code of Criminal Procedure, nor did Appellant use due diligence in securing the attendance of his witness for court, and the trial court did not abuse its discretion in denying it.

Preservation of error is governed by Rule 33.1 of the Texas Rules of Appellate Procedure, which provides that, to preserve error, a complaint must be "made to the trial court by a timely request, objection, or motion that ... state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex.R.App. P. 33.1(a)(1)(A) . The record must also show that the trial court "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." Tex.R.App. P. 33.1(a)(2). Regarding its specificity, the objection must simply be clear enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error. *Ford v. State,* 305 S.W.3d 530, 533

(Tex.Crim.App. 2009). No "magic words" are required. *Ford*, 305 S.W.3d at 533. An objection is considered in the context in which the complaint was made and the parties' shared understanding of the complaint at that time. *Lankston v. State,* 827 S.W.2d 907, 911 (Tex.Crim.App. 1992). A defendant's appellate contention must comport with the specific objection made at trial. *Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App. 2002) (see also *Lampkin v. State*, 470 S.W.3d at 895 (Tex.App.-Texarkana 2015)). An objection grounded on one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). The reviewing court will not consider errors, even of constitutional magnitude, not called to the trial court's attention. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App.1995).

Appellant's motion for continuance, among other things, clearly states he is seeking a continuance based on an alleged violation of Article 39.14 of the Texas Code of Criminal Procedure for failure of the state to provide an address for Brody West (CR Vol. 1, p.108-110). Appellant's trial counsel reiterated this basis for his motion when he argued it to the trial court (RR Vol 2, p.17), and even argued the specific text of Article 39.14(h) to the trial court (RR Vol 2, p. 25).

The offense date of Appellant's charge is September 23rd, 2011. Subsection (h) was added to Article 39.14 in 2013 and historical notes specifically state the

changes to Article 39.14 apply "to the prosecution of an offense committed on or after the effective date [January 1, 2014] of this Act". TEX.CODE.CRIM.PROC.ANN.art.39.14 (h) historical note [Act of May 14, 2013, 83rd Leg., R.S., ch. 49, Sec. 3, 2013 Tex. Sess. Law. Serv. 106,108]. See *Garza v. State*, 453 S.W.3d 548, 554 (Tex.App.-San Antonio 2014, pet. ref'd). Thus, Article 39.14(h) is inapplicable. Appellant is limited to the arguments and objections actually made before the trial court. Since Appellant argued a statue that is inapplicable to his case, he cannot make a different argument on appeal under an alleged violation of the state's duty under *Brady v. Maryland*.

Furthermore, even if the current version of Article 39.14 applied to this case, a plain reading of Article 39.14 does not require or compel the state to compile a witness list in order to provide such a list to the defense. Article 39.14(b) only requires witnesses be designating that intend to offer testimony under Rules 702, 703, and 705 of the Texas Rules of Evidence, commonly known as "expert" witnesses. See *Osbourn v. State*, 59 S.W.3d 809, 815 (Tex.App.-Austin 2001, no pet.). Appellant's assertion that a violation of Article 39.14 occurred because of a failure to provide an address for a potential lay witness on a witness list is simply not grounded in Texas law nor does Appellant cite any authority to support that position.

An examination of the record shows the following statements:

THE COURT: Well, if the State wasn't going to call him, Mr. Cole, why are they obligated to give you the address of someone they're not going to call?

MR COLE: Because [Brody West] is exculpatory under Brady/United States, I have a right to call him. I believe he's got some history that would be relevant to this case for many reasons (RR Vol. 2, p. 17-18).

Should this Court feel like that statement adequately preserved his point of error, the state's position is that no *Brady* violation occurred. Appellant attempts to argue the same point of error, i.e. violation of the state's duty to provide exculpatory or mitigating evidence, in both points two and three of his brief. This creates difficulty for the author responding to multifarious points of error. For the sake of briefing clarity, the state will limit argument of Appellant's *Brady* claim in the state's response to point of error number three.

A trial court's ruling on a motion for continuance is reviewed under an abuse of discretion standard. *Clay v. State*, 390 S.W.3d 1, 15 (Tex.App-Texarkana 2012, pet. ref'd) (citing *Gallo v. State*, 239 S.W.3d 757, 764 (Tex.Crim.App. 2007)). To establish an abuse of discretion, Appellant must show that the trial court erred by denying his motion and that he was harmed by the denial of a continuance. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex.Crim.App. 2010). It is no longer the

law of the State of Texas that a defendant file a motion for new trial in order to preserve error on a trial court's denial of a motion for continuance for want of a witness. See *Harrison v. State*, 187 S.W.3d 429 (Tex.Crim.App. 2005).

The state concedes that Appellant's motion for continuance was written and, while not notarized, was "sworn" to by a deputy district clerk pursuant to Texas Government Code Section 602.002(2), complying with Article 29.03 of the Texas Code of Criminal Procedure (CR Vol 1. p.108-110). However, Appellant's motion does not comply with Article 29.06 of the Texas Code of Criminal Procedure.

Motions for continuance for want of a witness are governed by Article 29.06 of the Texas Code of Criminal Procedure. It lists six factors that shall be necessary for the motion to be proper:

1. The name of the witness and his residence, if known, or that his residence is not known.

2. The diligence which has been used to procure his attendance, and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for, a subpoena, in cases where the law authorized attachment to issue

3. The facts which are expected to be proved by the witness, and it must appear to the court that they are material.

4. That the witness is not absent by the procurement or consent of the defendant.

5. That the motion is not made for delay.

6. That there is no reasonable expectations that attendance of the witness can be secured during the present term of court by a postponement of the trial to some future day of said term.

Appellant's written motion for continuance does not state the residence of Brody West or that his residence is unknown, nor does it state the diligence used to procure his attendance, nor does it state the facts which are expected to be proved by the witness, nor does it state the witnesses is not absent by the procurement or consent of the defense, nor does it state that there is no reasonable expectation that the witness can be secured during the present term of the court by postponement to some future day.

Where a defendant fails to demonstrate the diligence used in seeking to locate and interview a missing witness, it is not error for the trial court to deny the motion for continuance. *Tucker v. State*, 109 S.W.3d 517, 520 (Tex.App.-Tyler 1999 pet. ref'd) (citing *Johnson v. State*, 467 S.W.2d 247, 250 (Tex.Crim.App.1971)). Diligence, in the motion for continuance context, is the exercise of timely and persistent efforts to secure the attendance of witnesses, using the means and agencies provided by law. *Tucker*, 109 S.W.3d at 520 (citing *Edwards v. State*, 185 S.W.2d 111, 112 (Tex.1945)). If defense counsel waits until only a few days before trial to seek to secure a witness for trial, the court may conclude that due diligence has not been used. *Tucker*, 109 S.W.3d at 520 (citing *Norton v. State*, 564 S.W.2d

22

714, 716-17 (Tex.Crim.App.1978)). *Tucker* has been cited by this Appellate Court as authority in its unpublished opinion in *Maxwell v. State*, 06-12-00194-CR (Texarkana, unpublished opinion Feb. 12, 2014). Because a missing witness is a risk inherent in almost every case, the party seeking to present the witness must exercise reasonable diligence to protect against the possibility that a witness will not appear. *Rodriguez v. State*, 21 S.W.3d 562, 566 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Failure to take the necessary steps to secure the attendance of a key witness demonstrates a lack of reasonable diligence. *Rodriguez*, 21 S.W.3d at 566.

It is abundantly clear from the record that Appellant's trial counsel did not exercise due diligence in securing the attendance of Brody West for trial. Appellant's counsel stated clearly to the trial court that he issued subpoenas the day before trial (RR. Vol 2, p. 15), and that he had prior subpoenas out on Friday (RR Vol 2, p.16), five days before trial. The trial court expressed its displeasure with Appellant's counsel complete lack of due diligence on a case that had been pending for over two years. (RR. Vol 2, p. 21). A review of the record also does not show that Appellant ever stated what facts were to be proven by Brody West, nor explain to the trial court how those facts were material. (RR. Vol. 2, p. 14-28).

Subsequently, the trial court denied Appellant's motion for continuance. (RR Vol. 2, p. 28).

The Texas Court of Criminal Appeals has ruled that when requested by a criminal defendant, and when ordered to do so by the trial court, the state must give notice of its witnesses before trial. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex.Crim.App. 1993). Appellant's first trial counsel filed a motion for disclosure of the state's witnesses (CR Vol. I, p. 30-31), however the record does not reflect nor contain any order from the trial court ordering the state to disclose its witnesses to Appellant. What is interesting to note is that the state never called, nor intended to call, Brody West as a witness in this case. (RR Vol. 2, p. 16). It is apparent from the record that Appellant's trial counsel was aware of Brody West's involvement with this case several months before trial during the suppression hearing on June 2, 2014 (RR Motion to Suppress, p.65), Appellant's counsel also stated to the trial court that he was aware that Brody West was a potential witness in this case from the time he received the state's first witness list while arguing his motion for continuance. (RR. Vol. 2, p. 20). The state's first witness list was filed May 12th, 2014 and did not list Brody West as a witness. (CR Vol I. p. 65). The only reason Brody West was added to the state's subsequent witness list was because of a request from Appellant's counsel (RR Vol. 2, p. 16).

Appellant's motion for continuance clearly does not meet the requirements of Article 29.06. Further, Appellant did not present to the trial court what facts were expected to be proven by Brody West and it clearly did not appear to the trial court that they were material. Nor did Appellant (after being aware for almost a year that Brody West was a potential witness) exercise proper due diligence to secure the attendance of Brody West for trial. Failure to set out all the requirements of Article 29.06 in a motion for continuance due to lack of a witness renders the motion inadequate. *Latham v. State*, 20. S.W.3d 63, 67 (Tex.App.-Texarkana 2000) (citing *Gonzales v. State*, 505 S.W.2d 819 (Tex.Crim.App.1974); see also *Reese v. State*, 905 S.W.2d 631, 636 (Tex.App.-Texarkana 1995, pet. ref'd, untimely filed). Therefore, the trial court did not abuse its discretion in denying the motion. Appellant must ultimately be held responsible for his failure to exercise due diligence in securing the attendance of a witness he claimed was critical to his case.

## SUMMARY OF THE ARGUMENT REPLY ISSUE THREE

The state did not commit a *Brady* violation. This issue was not properly preserved for appellate review and assuming arguendo it was, the state: 1) did not suppress or fail to disclose any exculpatory or mitigating evidence, 2) the evidence was not favorable to the Appellant, and 3) the evidence was not material to the Appellant. Also, in Appellant's brief he writes issue number three deals with the failure to disclose the identity of the confidential informant. (Appellant's brief p. 2). However, issue number three is actually briefed as a *Brady* violation. (Appellant's brief p. 15). This is confusing to the author, so the state will limit argument to Appellant's alleged *Brady* violation.

## ARGUMENTS AND AUTHORITIES REPLY ISSUE THREE

First and foremost, the state feels it is important to note that Appellant in this case attempts to improperly supplement the appellate record in this matter. (Appellant's Brief Appendix p. 1-3). The appellate record is comprised of "the clerk's record and, if necessary to the appeal, the reporter's record." TEX.R.APP.P 34.1. An appellate court must determine a case on the record as filed and cannot consider documents attached as exhibits or appendices to briefs or motions. *James v. State,* 997 S.W.2d 898, 901 n. 5 (Tex.App.—Beaumont 1999, no pet.). "It is

elementary that we are precluded from considering materials outside the appellate record". *Yarbrough v. State*, 57 S.W.3d 611, 616 (Tex.App.-Texarkana 2001, no pet.) (citing *Sabine Offshore Serv., Inc. v. City of Port Arthur,* 595 S.W.2d 840 (Tex.1979); *In re Marriage of Murray,* 15 S.W.3d 202, 204 n. 3 (Tex.App.— Texarkana 2000, no pet.)). Appellant's "appendix" is, simply put, an attempt to improperly introduce evidence before this Appellate Court that is not part of the appellate record in this case, and such evidence should not be considered.

Appellant's brief claims that failing to provide the address of Brody West, the nature of the federal investigation, and the relationship that Brody West may have had with the confidential informant were all violations of the state's duty to provide all exculpatory and mitigating evidence. However, as cited as authority above, Appellant's points of error on appeal do not match the arguments and objections he made to the trial court, and as such are not preserved for appellate review. A review of the record reveals that after Appellant's motion for continuance was denied, at no time did Appellant offer any additional objections under *Brady v. Maryland* or its progeny during any witness testimony or at his motion for new trial. It should be noted, however, that after Investigator Bounds testified, Appellant re-urged his motion for continuance (RR Vol. 2, p. 178). Long-standing case law indicates when previously withheld evidence is disclosed at trial,

27

the defendant has an opportunity to request a continuance. *Taylor v. State*, 93 S.W.3d 487, 502 (Tex.App.-Texarkana 2002, pet, ref'd) (citing *Williams v. State*, 995 s.W.2d 754, at 762 (Tex.App.-San Antonio 1999, no pet.)) However, Appellant merely re-urged his previously denied motion for continuance and provided no additional argument as the reason for his continuance under *Brady v. Maryland*. Appellant's motion for continuance was based on failure to provide an address for a witness under Article 39.14. (CR Vol 1, p. 108-110).

Assuming arguendo that Appellant's *Brady* claim is preserved, the state fully complied with its duty under *Brady v. Maryland*. The state is required to provide potentially exculpatory information to the defense. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Thomas v. State*, 841 S.W.2d 399 (Tex.Crim.App.1992). The Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated when a prosecutor fails to disclose evidence favorable to the accused that creates a probability sufficient to undermine confidence in the outcome of the proceeding. *Thomas v. State*, 841 S.W.2d at 404. In order to establish a due process violation under *Brady*, a defendant must show: 1) the state failed to disclose evidence, regardless of the prosecutions good or bad faith; 2) the withheld evidence was favorable to the defense; and 3) the evidence is material, that is, there is a reasonable probability that had the evidence been

28

disclosed, the outcome of the trial would have been different. *Pena v State*, 353 S.W.3d 797, 809 (Tex.Crim.App. 2011). Favorable evidence is that which, if disclosed and used effectively, "may make the difference between conviction and acquittal." *Pena v. State*, 353 S.W.3d at 811 (citing *United States v. Bagley*, 473 U.S 667, 105 S.Ct. 3375, 87 L.Ed.2d 481, 676 (1985). Favorable evidence includes both exculpatory and impeachment evidence. *Thomas v State*, 841 S.W.2d at 404. A *Brady* violation may also occur when a prosecutor fails to disclose evidence that may impeach the credibility of a state's witness where the witness' credibility is material to the determination of an accused's guilt. *Dalbosco v. State,* 978 S.W.2d 236, 239 (Tex.App.-Texarkana 1998, pet. ref'd). Evidence whose value is limited to impeachment must also be provided to the defendant if the failure to do so would undermine confidence in the trial's outcome. *Ex parte Mitchell,* 977 S.W.2d 575, 578 (Tex.Crim.App.1997). *Brady* material "includes disclosure of any favorable information in the possession of police agencies or other members of the 'prosecutorial team' " *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Under *Brady*, nondisclosure of favorable evidence violates Due Process only if it is "material" to guilt or punishment. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the

constitutional sense." *Pena v. State,* 353 S.W.2d at 812 (citing *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed2d 342 (1976)). Hence, the defendant must show that, "in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure." *Pena v. State*, 353 S.W.3d at 812. "The question is not whether the defendant would more likely than not received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Kyles v. Whitley*, 514 U.S. 419, 434. This materiality standard is not a sufficiency of the evidence test. *Kyles v. Whitley*, 514 U.S. 419 at 434-435. When evaluating whether the materiality standard is satisfied, the strength of the exculpatory evidence is balanced against the evidence supporting conviction. *Hampton v. State*, 86 S.W.3d 603, 613 (Tex.Crim.App. 2002). The suppressed evidence is considered collectively, rather than item by item. *Kyles v. Whitley*, 514 U.S.419 at 436. "Brady and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the state does not have in its possession and that is not known to exist." *Pena v State*, 353 S.W.3d at 810 (quoting *Hafdahl v. State*,

30

805 S.W.2d 396, 399 n. 3 (Tex.Crim.App. 1990). The state does not have such a duty if the defendant was actually aware of the exculpatory evidence or could have accessed it from other sources. *Pena v. State*, 353 S.W.3d at 810 (see also *Harm v. State*, 183 S.W.3d 403, 407 (Tex.Crim.App. 2006) There is no *Brady* violation if it is not shown that the defendant was denied access to the allegedly favorable material. *Taylor v. State*, 93 S.W.3d at 499 (citing *Staten v. State*, 919 S.W.2d 493, 498 (Tex.App.-Fort Worth 1996, pet. ref'd). Further, the prosecutor is not required to furnish the defendant with exculpatory and mitigating evidence which is equally and fully accessible to the defense. *Taylor v. State*, 93 S.W.3d at 499 (citing *Flores v. State*, 940 S.W.2d 189, 191 (Tex.App.San Antonio 1996, no pet.). If the defense has the opportunity to cross-examine concerning the allegedly exculpatory material and there is no showing the defense would have pursued a different trial strategy if he or she had known this information sooner, no *Brady* violation is shown. *Williams v. State,* 995 S.W.2d 754, 761–62 (Tex.App.-San Antonio 1999, no pet.)

Appellant's point of error is that the state violated its obligations under *Brady v. Maryland* by failing to disclose the existence of a prosecution of Brody West by the federal government with an alleged federal criminal charge. An examination of the record reveals that Brody West was no longer working with the Marshall Police

31

Department (RR Vol. 2, p. 16). The District Attorney reported to the trial court that the District Attorney's office was not involved in the prosecution of Brody West, that Brody West was facing prosecution by federal authorities, that he did not know what charges Brody West was facing other than what had been reported in the newspaper, and had no information about Brody West's case or what the ultimate disposition would be (RR Vol. 2, p. 27). Other counsel for the state indicated to the trial court that Brody West was not going to be called as a witness by the prosecution. (RR. Vol. 2, p. 25). Three months later, during Appellant's motion for new trial, Brody West was again not subpoenaed to testify by Appellant and a review of the record shows no evidence of the nature of the federal charge against Brody West or how these allegations were exculpatory to Appellant. The evidence appears to be impeachment evidence only. Furthermore, there is simply no evidence in the appellate record that the federal investigation surrounding Brody West was related to the same confidential informant in this case. Only one reference is found in the testimony of Lynn Ames involving an informant but it is clear from his testimony as a whole he did not know any specifics about the federal investigation or what the charges were. (RR Vol. 2, p. 93-96, 104-105), additionally there was no *Brady* objection lodged after Lynn Ames testified.

First and foremost, the evidence that Brody West was being investigated by federal authorities was not suppressed by the state. The Harrison County District Attorney's Office and the Federal government are not part of the same "prosecutorial team". Appellant cites to no authority that the state must search the files of a federal government agency involving a matter unrelated to Appellant's case for evidence that might have impeachment value to the defense. See *State v. Moore*, 240 S.W.3d 324 (Tex.App.- Austin 2007, pet. ref'd) and *Shanks v. State*, 13 S.W.3d 83, 86 (Tex.App.-Texarkana 2000, no pet.). *Moore* and *Shanks* are important because they involve cases where a *Brady* violation was alleged due to failure to turn over impeachment evidence against a state's witness. In *Moore*, the Austin Court of Appeals ruled that the Texas Attorney General and the Travis County District Attorney were not part of the same "prosecutorial team", so that evidence known to the Attorney General is not considered evidence known to the "state". In *Shanks*, this Court ruled that no *Brady* violation occurred when the state failed to disclose impeachment evidence in the form personal employment history of a witness who work for the Texas Department of Criminal Justice for the same reason, that the two were not the same "prosecutorial team". Also in *Shanks*, this Court ruled the witness was a peripheral player who did not testify about the incident germane to the prosecution. In the case before this Court, Brody West

33

never testified and was not going to be called as a witness by the state. (RR Vol. 2, p. 25) The evidence that Brody West was being prosecuted by federal authorities was a matter of public knowledge and been reported in the newspaper (RR. Vol. 2, p.27). The state has no duty to provide to the Appellant with exculpatory and mitigating evidence which is equally and fully accessible to the defense. *Taylor v. State*, 93 S.W.3d at 499. District Attorney's Office Investigator Joe Bounds testified that a federal investigation was known to the District Attorney's Office but did not know with certainty any details regarding that investigation. (RR Vol. 2, p. 175-176). No Brady objection was articulated after Investigator Bounds testified and was a summation of the information the District Attorney reported to the trial court during the motion for continuance. It had long been known that Brody West was no longer working for the Marshall Police Department (RR Vol. 2, p. 16) information not refuted by Appellant. Lynn Ames testified he was aware that Brody West under a federal investigation that did not involve anyone in the Marshall Police Department, that it may have involved informants but that he was unaware as to what the allegation was (RR Vol. 2, p.93). After Lynn Amen testified there was no *Brady* objection and the only continuance requested was to procure the testimony of Scott Beck. (RR Vol. 1, p.101). Any alleged Brady

34

violation after Lynn Ames testified was waived when Appellant did not object and only requested a continuance to secure the attendance of another witness.

The state disclosed to the Appellant exactly what it knew, that there was a potential federal prosecution of a witness who was not going to be called by the state and who the state was not relying on to convict the Appellant. (RR Vol. 2, p.25, 27). Other than that, no details about the investigation were known to the state nor could be provided to Appellant because the state and the Federal government were not part of the same "prosecutorial team". Brody West's creditability was also not material to the disposition of Appellant's guilt. The Appellant cross-examined each one of the state's witnesses with the alleged exculpatory material, and has made no showing either at the motion for new trial or now on appeal how he would have pursued a different trial strategy had his motion for continuance been granted.

Despite Appellant's statements to the trial court in his motion for continuance that he had basically no knowledge about any exculpatory or mitigating evidence pertaining to Brody West (RR Vol. 2, p.25-26) (RR Vol. 2, p. 28), it is interesting to note the reason that Appellant sought a continuance in the first place was to subpoena Brody West to testify because Appellant stated he was: "exculpatory" and that "I believe he's got some history that would be relevant to this case for

many reasons" (RR Vol. 2, p.17-18). It is clear from that statement alone at the beginning of the motion for continuance that Appellant's counsel was aware of the potentially exculpatory or mitigating evidence. How can the Appellant claim the state suppressed evidence and he is unaware of that evidence if he seeks a continuance and informs the trial court he is attempting to procure the very exculpatory evidence he claims he has no knowledge of? This argument is circular and shows the evidence was known to Appellant and was not suppressed by the state.

Assuming, without conceding, that the Court believes the evidence was suppressed, Appellant has not shown the evidence was "favorable" to him. The state's position is that there is simply not enough information in the appellate record to make a determination that the information was favorable. Whether unrevealed evidence would have been "favorable" to the accused must be determined by ascertaining whether the evidence "if disclosed and used effectively … may make the difference between conviction and acquittal." *Chandler v. State*, 278 S.W.3d 70, 74 (Tex.App.-Texarkana 2009, no pet) (quoting *Thomas v State*, 841 S.W.2d 399, 404 (Tex.Crim.App. 1992)). The only evidence on the record is that there was an allegation against Brody West by the Federal government, and that he was no longer with the Marshall Police Department. (RR. Vol. 2, p. 16)

36

(RR Vol 2, p. 27). The state had no knowledge of, nor duty to discover, nor did Appellant offer any evidence in his motion for continuance or motion for new trial: What charge Brody West was facing, how it was relevant as impeachment evidence under these circumstances, how this information was favorable to appellant, how this information related to Appellant's current charge, or even how this information would be admissible in trial. Based on the record as a whole, the state argues Appellant has not shown how this information was "favorable" to him.

Again assuming, without conceding, that the evidence was favorable to appellant, for the same reasons Appellant has not shown, nor has he briefed and shown to this Court, how the evidence was "material". "Material evidence" is evidence that has a reasonable probability, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. *Chandler v. State*, 278 S.W.3d at 74 (quoting *Ex parte Kimes*, 872 S.W.2d 700, 702 (Tex.Crim.App. 1993). When evaluating whether the materiality standard is satisfied, the strength of the exculpatory evidence is balanced against the evidence supporting conviction. *Pena v. State*, 353 S.W.3d at 812 (citing *Hampton v. State*, 86 S.W.3d 603, 613 (Tex.Crim.App. 2002). To make this determination, appellate courts must examine the alleged error in the context of the entire record. *Taylor v. State*, 93 S.W.3d at 501 (citing *Thomas v. State*, 841 S.W.2d at 404). "We are

37

required to examine the error in context of the overall strength of the State's case. See *Thomas v. State*, 841 S.W.2d at 405. "The *Thomas* court referred to the analysis used by the United States Supreme Court in *Agurs* to supply the form of that analysis." *Taylor v. State*, 93 S.W.3d at 501. "The *Agurs* opinion states:

> If … one of only two eyewitnesses to a crime had told the prosecutor that the defendant was definitely not its perpetrator and if this statement was not disclosed to the defense, no court would hesitate to reverse a conviction resting on the testimony of the other eye witness. But if there were fifty eyewitnesses, forty-nine of who saw the defendant, and the prosecutor neglected to reveal the other, who was without his badly needed glasses on the misty evening of the crime, had said that the criminal looked something like the defendant but he could not be sure as he had only had a brief glimpse, the result might well be different." *Agurs*, 427 U.S. at 113, 96 S.Ct. 2392.

Therefore, a verdict that is only weakly supported by the record is more likely to be affected by the prosecutorial error than a verdict which is strongly supported. *Taylor v. State*, 93 S.W.3d at 501 (citing *Strickland v. Washington*, 466 U.S.668, 696, 104 S.Ct. 2052, 90 L.Ed.2d 674 (1984). Brody West's credibility was not material to the disposition of Appellant's guilt.

The evidence in the state's case against Appellant was enormous. A confidential informant supplied information to the police that Appellant was seen in possession of large quantities of narcotics which lead to the issuance of a search warrant for Appellant's residence (RR Vol. 5, State's exhibit 1). Lynn Ames testified that in his opinion Appellant was a drug dealer and possessed those drugs with intent to distribute. (RR Vol. 2, p.87). Most importantly, Appellant himself confessed and admitted to possession of the cocaine and claimed it belonged to him and not anyone else and further explained the reasons why he began selling the cocaine that was found in his home. (state's exhibits 16 and 17). The verdict in this case is strongly supported by the evidence, and Appellant has failed to show how the evidence was "material". An examination of the record as whole does not show that had the evidence been disclosed (which the state does not concede it was not disclosed) the outcome of the proceeding would have been any different; a determination that was also made by the trial court when pronouncing Appellant's sentence. (RR Vol. 3, p. 9-11).

Finally, appellant asks this court to reverse the judgment of the trial court and enter a judgment of acquittal. That is an improper remedy for Appellant's alleged Brady violation. The Court of Criminal Appeals has ruled on several occasions that the proper remedy for a Brady violation is a reversal of Appellant's conviction and

to remand to the trial court for further proceedings. *Ex Parte Mitchell*, 977 S.W.2d 575, 578 (Tex.Crim.App. 1997), See also *Pena v. State*, 353 S.W.3d at 814. While not conceding any of Appellant's points of error, the state out of an abundance of caution felt necessary to address Appellant's request for an improper remedy.

## PRAYER

The trial court having committed no reversible error, the state respectfully prays this Court affirm the verdict and judgment of the court below.

Respectfully Submitted
Coke Solomon
Criminal District Attorney
Harrison County, Texas

By:      /s/ Shawn Eric Connally
_____

Shawn Eric Connally
Assistant Criminal District Attorney
Bar #24051899

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of the Appellee has been sent to the attorney for Appellant, Robert Cole, on the 21st day of December, 2015.

/s/ Shawn Eric Connally
_____

Shawn Eric Connally

## CERTIFICATE OF COMPLIANCE

I hereby certify compliance with T.R.A.P 9.4(i)(3), and that the number of words in this document is 10224.

/s/ Shawn Eric Connally
_____

Shawn Eric Connally