**Affirmed and Opinion Filed March 13, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00490-CR**

**HARRY ANDERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1624966-M**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Reichek

Harry Anderson appeals his conviction for the second degree felony offense of manslaughter. Asserting five issues, appellant contends (1) the trial court erred in denying his motion for continuance, (2) the evidence is insufficient to support the jury's negative finding on the issue of self-defense, (3) the trial court erred in overruling appellant's objection to evidence of an extraneous offense, and (4) the court's charge to the jury contained an erroneous instruction on self-defense. We affirm the trial court's judgment.

## Background

Appellant and the victim, Darius Robinson, worked as day-laborers through Pacesetter, a staffing service located in Garland, Texas. Darius had been receiving work through Pacesetter for several years. Appellant began to receive job placements through the company a few weeks before the date of the offense. Darius's wife, Brea Robinson, and Brea's friends, Tabitha Randle and Kymerald "Kim" McClure, also worked as day-laborers through Pacesetter.

In late November or early December 2016, appellant was placed at a job site with Brea, Tabitha, and Kim. At the end of their shift, appellant and Kim were involved in an altercation that resulted in the police being called. Appellant said they were arguing about the location of Kim's broom. According to appellant, during the argument he used his broom to move Kim's broom and Kim "was hit." Tabitha was present when the incident occurred and stated that appellant hit Kim with a broom.

Tabitha and Kim told Darius about the broom incident. Brea additionally told Darius that appellant was trying to talk to her. Tabitha testified Brea and appellant were involved in a relationship, but that Darius was unaware of this. Appellant stated at trial that he and Brea were having a "little affair," including "groping" and "lots of kissing." Brea denied that she and appellant were involved. After being

told about the broom incident and appellant's attempts to talk to Brea, Darius told Tabitha he was going to "charge up" appellant when he saw him.

On the morning of December 2, 2016, Darius, Brea, and Tabitha drove to Pacesetter together. Brea and Tabitha checked in while Darius went to speak with his cousin Rashad Lawson in the waiting area.

Appellant and his fiancée, Martekia Brown, were in Martekia's car in the Pacesetter parking lot after having spent the night there. Appellant testified Martekia was still asleep when he went into the waiting room and encountered Darius. Darius approached appellant and asked to speak to him outside. Although Darius had never met appellant, Brea stated Darius recognized him because appellant has only one eye. Appellant walked outside followed by Darius and Brea.

Brea testified that, once they were outside, Darius told appellant "if you have a problem with the women, then you have a problem with me." He further told appellant and to stay away from Brea. Brea said appellant asked Darius if he was threatening him, and Darius replied "no." Appellant then walked back to Martekia's car and appeared to search for something inside. Brea told Darius they should go, but Darius refused. Appellant returned a few minutes later.

Allison Kennedy was in the parking lot and saw appellant and Darius "getting into it." Kennedy testified that when Darius turned his head to say something to Brea, appellant stabbed Darius in the side of his head with a folding knife. Darius immediately fell to the ground. Brea stated both she and Darius tried to fight back

–3–

against appellant, but they could not make contact with him. Brea screamed for someone to call the police and everyone scattered. Allison testified appellant walked past her saying something like "you heard me" before getting into his car and speeding off.

When Brea looked down at Darius she saw he was bleeding from the head. She used her scarf to put pressure on the wound. She later realized she had been stabbed in the shoulder. Although Brea did not notice Rashad during the confrontation, she stated Rashad sustained a stab wound as well.

Darius died as a result of his injuries. A medical examiner testified Darius suffered multiple stab wounds to his head and back. The stab wound to his head went through the temple bone and penetrated his temporal lobe. One of the stab wounds to his back penetrated his kidney.

Appellant's version of what occurred during his confrontation with Darius differed from Brea's and Allison's versions with respect to what was said and who initiated the physical fight. Appellant agreed that Darius confronted him about the incident with Kim and told him to stay away from Brea. However, appellant stated that Darius used highly threatening language, stating that he would kill appellant if he did not stay away from Brea and he would "put it on Cript." Appellant said "Cript" was a reference to a street gang. Appellant conceded nothing physical occurred before he walked back to Martekia's car.

Once back at the car, appellant said he was looking for his phone because he did not know "what these people are about to do." Appellant denied he was looking for a knife, stating he already had a knife in his possession. He testified he always carried a knife in his pocket for protection when he and Martekia slept in the car. Appellant stated he returned to the Pacesetter building because he needed to get his job assignment for the day.

As he walked back to the building, the argument with Darius resumed. Appellant said Darius had one hand in his sweatshirt and, although he did not see any weapons, he was concerned about what Darius might be concealing. As appellant was looking at Darius's hand, he said Darius hit him. Rashad then joined in the fight. Appellant stated he did not remember pulling out his knife, but he started "swinging to get away from there" because he was afraid he was going to be killed.

Appellant said he eventually ran back to the car and drove away. Martekia was still asleep when they left. Police tracked appellant to a gas station in Coppell where he was arrested. In the car, police found a sweatshirt with blood on it, a knife, a pair of scissors, and a box cutter. The knife used to stab Darius was not recovered. Appellant testified he probably dropped it at the scene as he was running to get away from the attack.

Appellant was arrested and indicted for the offense of murder. Trial began on Wednesday, May 4, 2022. The State rested its case on Friday, May 6. On Monday,

May 9, a discussion was conducted outside the presence of the jury in which defense counsel stated he wanted to call Martekia as a witness, but was informed that morning by Martekia's son, Randall Brown, that she had suffered a mental breakdown and was not able to testify. Counsel asked for a continuance of, "at a minimum," one week to allow Martekia's condition to improve. The State responded that it was concerned a one week break in the middle of the trial could affect the jury's ability to remember the evidence presented during the State's case in chief.

Randall was brought into court the same day for a sub rosa examination. He testified Martekia suffered from schizophrenia and depression, and she had been released from the hospital four days earlier. He stated his mother told him to bring her to court that morning so she could testify, but he refused because he did not think it was good idea. Defense counsel argued they needed Martekia's testimony to support appellant's assertion that he was acting in self-defense when he stabbed Darius. He said Martekia could testify regarding appellant's mindset when he was confronted at Pacesetter and "how shocked he was [at] having been attacked and how he had to defend himself." The trial court denied the request for a one-week continuance, but agreed to continue the trial until the next day to allow the defense time to secure Martekia's appearance. The court indicated it believed a one-day continuance would be sufficient since Martekia had indicated she wanted to appear and testify.

The next day, Martekia failed to come to court. The defense filed a sworn motion asking to continue the case for another week stating "[w]e believe she may be recovered enough to testify later this week but preferably after her next doctor's visit this Friday." The court denied the additional continuance stating the defense had not used the resources available to it to secure Martekia's appearance in court such as having her subpoenaed for the dates they wished her to testify or having their appointed investigator ensure her presence at trial. The court further stated that, because Martekia was not present in court, it was unable to determine whether she was temporarily unable to testify due to her mental health issues.

After hearing the evidence, the jury found appellant guilty of the lesser included offense of manslaughter. Punishment was assessed at life in prison. This appeal followed.

**Analysis**

**I. Continuance for Absent Witness**

In his first issue, appellant contends the trial court erred in denying his motion for continuance to secure Martekia's testimony at trial. We review a trial court's decision to refuse a continuance for an abuse of discretion. *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995). A continuance after trial has begun may be granted only "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be

had." Tex. Code Crim. Proc. Ann. art. 29.13. Article 29.06 of the Texas Code of Criminal Procedure provides that a first motion for continuance based on the absence of a witness must show, among other things, the diligence used to procure the witness's attendance. Tex. Code Crim. Proc. Ann. art. 29.06. In the context of article 29.06, diligence "is the exercise of timely and persistent efforts to secure the attendance of witnesses, using the means and agencies provided by law." *Tucker v. State*, 109 S.W.3d 517, 520 (Tex. App.—Tyler 1999, pet. ref'd). If defense counsel waits until shortly before trial to attempt to secure a witness, he has failed to exercise diligence. *See Norton v. State*, 564 S.W.2d 714, 716–17 (Tex. Crim. App. 1978).

Appellant's motion for continuance did not address the diligence used to procure Martekia's attendance at trial or how the defense was so surprised by her absence that a fair trial could not be had. Randle's testimony during the sub rosa examination showed Martekia was willing to appear and testify. Although the trial court gave the defense an additional day to secure her appearance "using the means and agencies provided by law," the defense offered no evidence of any attempt to do so. Based on this record, we conclude the trial court did not abuse its discretion in denying appellant's motion for a continuance. We resolve appellant's first issue against him.

## II. Sufficiency of the Evidence

In his second and third issues, appellant challenges the sufficiency of the evidence to support the jury's negative finding on the issue of self-defense. When

reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction relative to a claim of self-defense, "we do not look to whether the State presented evidence which refuted the self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). The factfinder is the sole judge of the witnesses' credibility and their testimony's weight. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The factfinder may choose to disbelieve all or any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). "A court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

A person is justified in using deadly force to the degree he reasonably believes such force is immediately necessary to protect against another person's use or

attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32(a)(1). A reasonable belief is one that an ordinary and prudent person would hold under the same circumstances. *Id.* § 1.07(a)(42). The use of force against another is not justified in response to verbal provocation alone. *Id.* § 9.31(b)(1).

Appellant argues "the evidence presented at trial by the defen[se] establishes that appellant feared for his life and was acting in self-defense when he brandished the knife." The evidence appellant believed his life was in danger came entirely from his own testimony, however, which the jury was free to disbelieve. *See Sharp*, 707 S.W.2d at 614. Appellant conceded he never saw Darius with a weapon. The State's witnesses said appellant began the physical altercation by stabbing Darius in the head when Darius turned his head to speak to his wife. Viewing the evidence in the light most favorable to the verdict, the jury could rationally conclude appellant never reasonably believed deadly force was immediately necessary protect himself against any unlawful use of deadly force by Darius. *See Gaona v. State*, 498 S.W.3d 706, 709–10 (Tex. App.—Dallas 2016, pet. ref'd). We resolve appellant's second and third issues against him.

## III. Extraneous Offense Evidence

In his fourth issue, appellant contends the trial court erred in overruling his objection to the State's questioning of Tabitha about the conflict between Kim and appellant a few days before appellant killed Darius. Although Brea had already testified about the "incident" generally, defense counsel objected when the State

–10–

asked Tabitha to discuss the specifics of what occurred. Counsel argued it was "an extraneous offense outside the scope of this testimony."

Evidence of extraneous offenses is not admissible to prove that a defendant committed the charged offense in conformity with a bad character. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). The evidence may be admissible, however, when it has relevance apart from character conformity. *Id.* "The jury is entitled to know all the relevant surrounding facts and circumstances of the charged offense." *Id.* We review the admission of extraneous offense evidence for an abuse of discretion. *Keller v. State*, 604 S.W.3d 214, 222 (Tex. App.—Dallas 2020, pet. ref'd). If the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion. *Devoe*, 354 S.W.3d at 469.

During the State's case in chief, the prosecutor questioned Brea about the "incident" between appellant and Kim without eliciting any details of what occurred. Through Brea's testimony, the State established the incident was a main impetus for Darius wanting to speak with appellant on the day of the offense. On cross-examination, defense counsel questioned the seriousness of the incident by asking Brea if she was aware that Kim told the officers who were called to the scene that she wasn't hurt, and that the police considered the altercation to be only a misdemeanor. Brea stated she was not aware of either of those things.

After the State rested, the defense called Tabitha as its first witness. Defense counsel asked Tabitha about Brea's relationship with appellant. Tabitha testified

–11–

Brea would text appellant using her phone or Kim's phone, and appellant would pick Brea up from Tabitha's house. She further said that, although Darius was not aware of appellant's relationship with Brea, he was made aware of appellant's interest in her. According to Tabitha, Darius told her he was going to "charge up" appellant.

By attempting to minimize the seriousness of the prior incident between appellant and Kim, and presenting evidence of Brea's alleged relationship with appellant, the defense was attempting to shift the narrative of Darius's motivation for confronting appellant and support appellant's claim that he reasonably feared for his life. Tabitha's testimony that appellant struck Kim with a broom was not elicited to show appellant's character, but rather that the incident was serious enough to cause Darius to want to confront appellant about it. The incident was not, however, of such a nature that it would justify appellant's fear that Darius wanted to kill him. "In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.36 (a). Because the details of the incident were relevant to show what appellant reasonably believed was the reason for the confrontation at the time of the offense, we conclude

the trial court did not abuse its discretion in overruling appellant's objection. We resolve appellant's fourth issue against him.[1]

## IV. Jury Instruction

In his final issue, appellant contends the trial court's charge to the jury contained an erroneous instruction regarding the duty to retreat. Before September 1, 2007, deadly force used in self-defense was justified only "if a reasonable person in the actor's situation would not have retreated." *Krajcovic v. State*, 393 S.W.3d 282, 284 (Tex. Crim. App. 2013). After September 1, 2007, the Castle Doctrine relieved a person of the duty to retreat if (1) the actor had a right to be present at the location where the deadly force was used, (2) he did not provoke the person against whom the deadly force was used, and (3) he was not engaged in criminal activity at the time that the deadly force was used. *Id*.; *see also* TEX. PENAL CODE ANN. § 9.32(c). The court's charge in this case properly instructed the jury on the elements of the Castle Doctrine. In addition, the charge instructed the jury that "[i]n determining whether an actor reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat." The application portions of the charge, however, instructed the jury it could acquit appellant of the grounds of self-defense only if he (1) had a reasonable expectation or fear of death or serious bodily injury, (2) reasonably believed the use of deadly

---

[1] In his brief on appeal, appellant additionally argues the prejudicial effect of this evidence outweighed its probative value. We do not address this assertion because appellant did not object on this basis at trial. *See Montgomery v. State*, 810 S.W.2d 372, 388–89 (Tex. Crim. App. 1991).

force on his part was immediately necessary against Darius's use or attempted use of unlawful deadly force, and (3) a reasonable person in appellant's situation at that time would not have retreated. The State concedes the latter portion of the application instruction is erroneous, but contends, based on the record, the error was harmless. We agree.

In evaluating error in a jury charge, we must determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If, as in this case, the defendant objected to the error at trial, we reverse if the error "is calculated to injure the rights of the defendant," which means there was "some harm." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). To determine whether there was some harm from the error, we consider the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information in the record of the trial as a whole. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 2011). The harm must be actual, and not merely theoretical. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

Although appellant asserts in his brief on appeal that he was harmed by the erroneous instruction, he provides no argument or analysis to show how he was harmed. Looking at the jury charge as a whole, the section that properly instructed the jury on the law of self-defense would have at least some mitigating effect on the erroneous language in the application paragraphs. *See Finch v. State*, No. 05-15-

–14–

00793-CR, 2016 WL 2586142, at *7 (Tex. App.—Dallas May 4, 2016, pet. ref'd) (mem. op., not designated for publication). More importantly, the duty to retreat was not a contested issue at trial.

The State's evidence showed appellant was the instigator of the fight in which Darius was killed. In contrast, appellant testified he walked away after Darius initially threatened him, and was attacked when he tried to return to the Pacesetter office to obtain his work assignment. Appellant stated he pulled out his knife and began swinging his arm in an attempt to escape the attack. Under the State's theory of the case, the duty to retreat was not applicable. Under appellant's theory, any duty to retreat was fulfilled. Neither side mentioned the duty to retreat during opening or closing statements. Instead, they referred generally to the concept of whether appellant's conduct was justified because he was acting in self-defense. After reviewing the record, we conclude appellant was not harmed by the erroneous instruction. *See Guzman v. State*, No. 03-13-00131-CR, 2015 WL 2400238, at *9–11 (Tex. App.—Austin May 13, 2015, pet. ref'd) (mem. op., not designated for publication). We resolve appellant's fifth issue against him.

We affirm the trial court's judgment.

/Amanda L. Reichek//
AMANDA L. REICHEK
JUSTICE

220490f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HARRY ANDERSON, Appellant

No. 05-22-00490-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas Trial Court Cause No. F-1624966-M. Opinion delivered by Justice Reichek. Justices Partida-Kipness and Breedlove participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of March, 2024.